EGBERT B. ELLISON and J. HUYLER ELLISON, Composing the Firm of ELLISON & Co., Appellants, *v.* SARAH M. CREED, Respondent.

*Contract for the erection and sale of a heating apparatus — what use by the vendee, after discovery of defects therein, constitutes an acceptance thereof — counterclaim.*

A vendee in a contract for the erection in her dwelling house of a hot water heating apparatus, which was tested about Christmas, 1895, who, although she finds some fault with it, never repudiates the work or orders or suggests that the apparatus be removed, but continues to use it up to the time of the trial, on the 17th day of February, 1897, of an action brought to enforce payment of the value thereof, must be considered to have accepted the apparatus, and cannot interpose as a defense the existence of defects therein discovered early in the year 1896.

*Semble*, that the vendee might have set up, by way of counterclaim, any damages which she had sustained because of such defects.

HATCH and CULLEN, JJ., dissented.

APPEAL by the plaintiffs, Egbert B. Ellison and J. Huyler Ellison, composing the firm of Ellison & Co., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Queens on the 2d day of March, 1898, upon the report of a referee dismissing the complaint upon the merits in an action brought to foreclose a mechanic's lien.

*James C. Van Siclen,* for the appellants.

*W. J. Stanford,* for the respondent.

WOODWARD, J.:

The plaintiffs in this action succeeded to the business of their father, Thomas J. Ellison, a steam and hot water heating engineer, who in the fall of 1895 entered into a contract or agreement with the defendant to furnish and erect a hot water heating apparatus in her dwelling house. The boiler and radiators were put in and connected, and soon after Christmas, 1895, the fires were started and the test was made, and so far as the evidence shows, this test was satisfactory to all concerned. Although there is some evidence that the defendant found some fault with the heating apparatus, there is no evidence in the case to show that she ever repudiated the work, or that she ever ordered or suggested that it be removed. On the con-

trary, it appears from the testimony of defendant's witnesses that the heating apparatus was still in her house, and that she continued to use it up to the very day of the trial of this action. In view of this fact, we are unable to reconcile the referee's conclusions of law, "that the said Thomas J. Ellison and the plaintiffs failed to perform said agreement with the defendant," and "that the defendant is entitled to judgment against the plaintiffs dismissing the complaint, with costs," with the evidence. We know of no rule of law which permits one person to allow another to enter upon his premises and put in machinery and apparatus for the benefit of the owner, accepting the use of the same, without being liable for the fair and reasonable value of such property. If the defendant had put in a counterclaim for damages due to a failure on the part of the plaintiffs to put in a heating apparatus according to contract, there might be some force in the finding of the referee, that " under said agreement said Thomas J. Ellison did put in said dwelling house a certain steam heating apparatus and appurtenances, but the same were not capable of heating said rooms, or any of them, according to such agreement;" but what bearing this can have upon the case at bar, where the defendant has accepted and continued to make use of the apparatus after the alleged discovery of the defects, we are unable to understand. " If the fault was trivial or of such a character as easily to be remedied," say the court in the case of *Chambers* v. *Lancaster* (3 App. Div. 215), Mr. Justice CULLEN writing the opinion, " the defendant would be justified in using the machines and not precluded from returning them upon the subsequent appearance or discovery of a gross defect that would render the machines useless or materially impair their value. But in this case, after the machines had repeatedly broken down in vital parts, and the inadequacy of the machines to perform the specified work had become apparent, the defendant company still continued to use them. This operated as an acceptance." The like doctrine is asserted in the case of *Wiles* v. *Provost* (6 App. Div. 1), where the court say that " The vendee is entitled to a reasonable time for examination, but if he intends to reject the article furnished as not in compliance with the contract, he must not, after such examination and after discovering its true condition, do anything inconsistent with the vendor's ownership." " He would," say the court in the case of *Brown* v. *Foster*

(108 N. Y. 387), "in such a case as the present, be entitled to a reasonable time for examination; long enough to put the machinery in motion and see it operate, and he might for that purpose do with it whatever was necessary, and if, after such examination, without dealing with it in any other way or for any other purpose, he rejected it, acceptance could not be implied. The evidence in this case, however, permits an inference that the plaintiff exercised a dominion over the machinery inconsistent with ownership in the defendants, and consistent only with title as well as possession in himself. He used the machinery in the prosecution of his business, and although complaining did not intermit its use. Knowing its defects, he continued to run it. His intent in so doing may be gathered from his acts as well as from his words, and it cannot be said as matter of law those acts do not afford substantial proof of an acceptance, not for the purpose of examination, but for use."

In the case at bar the alleged defect in the heating apparatus was discovered early in the year 1896, yet at the time of the trial of this action, on the 17th day of February, 1897, the defendant was still using the heating apparatus in her house. This use of the apparatus is inconsistent with ownership on the part of the plaintiffs, and establishes an acceptance on the part of the defendant for which she is clearly liable to the plaintiffs. If the apparatus was not such as the defendant contracted for, she might have refused to accept it, or she might have set up a counterclaim for any damages which she may have sustained; but she cannot go on using the apparatus as her own and refuse to compensate the plaintiffs, who have invested their time and money in the property which she has converted to her own use.

The judgment in favor of the defendant should be reversed and judgment for the plaintiffs should be entered, with costs.

All concurred, except HATCH, J., who read for affirmance, with whom CULLEN, J., concurred.

HATCH, J. (dissenting):

This action is one to foreclose a mechanic's lien. Before the plaintiffs are entitled to succeed in the action they must show substantial compliance with the contract. (*Glacius* v. *Black*, 50 N. Y.

145.)   An examination of the record, as I view it, shows that the court was justified in finding that the contract was in no sense performed.   The testimony tended to establish that the heating apparatus was not sufficient, and did not answer the terms of the contract. Indeed, the testimony of Smith tended to establish that no contract was made with the defendant, of any character, but that he made the contract and became responsible for its fulfillment, in consequence of which no debt existed in favor of the plaintiffs.   The referee, however, seems to have disregarded this testimony and rendered his decision based upon the theory that the contract was not performed.   It is not contended by the plaintiffs that they performed the contract which the testimony of Smith and Mrs. Creed tended to establish was made.   The plaintiffs' view is that they made no such contract, but that they had complied with the arrangement which they did make.   The referee found that the plaintiffs failed in the fulfillment of their contract, and I can see no view on which his conclusions can be disturbed as being against the weight of the testimony.   The only basis which could authorize the maintenance of this action is found in the use of the article by the defendant.   But upon this subject it appears that the apparatus was put in the house in December, 1895, and the lien was filed on the 12th day of March, 1896.   There is evidence tending to establish that during this period the defendant complained that the contract had not been fulfilled, and while complaint was not made by the defendant to the plaintiffs, it was made to Smith, who made the arrangement with the plaintiffs, and the plaintiffs agreed to remedy the defects.   They never did, but brought this action to foreclose the lien about the 31st day of July, 1896.

It seems to be conceded that if the defendant had notified the plaintiffs to remove the apparatus from the house she could not be charged with liability based on the ground that it had been accepted. I do not think this can change the result ; *first*, for the reason that no such point was made upon the trial ; and, *second*, the contract is entire, with no obligation to pay resting upon the defendant until the completion of it.   The apparatus was so attached to the building as to become a part of the structure.   Under such circumstances, there having been a substantial failure to perform, the plaintiffs were not entitled to recover, even though to some extent the defend-

ant enjoyed whatever benefit was to be derived from the use of the apparatus. Indeed, at the most, whether the defect was waived was a question of fact, and the referee must be deemed to have found that there was no waiver. (*Smith* v. *Brady*, 17 N. Y. 173.) This case is authority unshaken for this proposition. (*Mack* v. *Snell*, 140 N. Y. 193, 198; *Anderson* v. *Petereit*, 86 Hun, 600.)

If the plaintiffs had relied upon their claim of acceptance to sustain their action they should have urged it upon the attention of the referee at the trial; but they planted themselves squarely upon the ground that they had performed their contract and were entitled to recover for that reason. Such was the theory of the trial, and such was the determination against them upon this issue by the referee.

I do not see, therefore, upon what legal ground this judgment can be reversed.

CULLEN, J., concurred.

Judgment reversed and a new trial granted before a new referee to be appointed at Special Term, costs to abide the event.