## BATES v. FISH BROS. WAGON CO.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. SALES—ACCEPTANCE.

The fact that a vendee continues to use, without complaint to the vendor, a heating plant, sold with warranty, after discovering its defects, precludes him from denying an acceptance thereof.

2. SAME—BREACH OF WARRANTS—REMEDY OF VENDEE.

Where a vendee, after discovering the defects of an article sold without warranty, continues to use it without notifying the vendor, and thereby accepts it, he is left to his remedy for damages accruing by reason of the breach of the express warranty.

3. SAME—FINDING IN THE ALTERNATIVE.

In an action to recover the balance due for a heating plant, defendant interposed a counterclaim alleging special damages arising from the failure of the plant to conform to the warranty. Held, that defendant cannot complain of a finding that the failure to get the amount of heat warranted was due either to his failure to furnish sufficient steam or to plaintiff's failure to furnish a sufficient number of coils, as in the alternative, where there was an award of damages on the counterclaim on the hypothesis that the defect was due to the lack of coils.

4. SAME—BREACH OF WARRANTY—MEASURE OF DAMAGES.

The amount it will cost to bring an article up to the full measure of the vendor's warranty thereof is not an improper or speculative measure of damages on a counterclaim by the vendee for damages for breach of the warranty in an action for the price.

5. APPEAL—FINDING—REVIEW.

A finding of a referee fairly supported by the evidence will not be disturbed on appeal.

6. SALES—BREACH OF WARRANTY—SPECIAL DAMAGES.

A vendee is not entitled to special damages for the failure of the article sold to conform to the warranty thereof, where he continued to use it, after discovering its defects, without notifying the vendor, who might easily have remedied them.

7. COSTS—EXTRA ALLOWANCE.

Where defendant has succeeded in part on his counterclaim, it is error to compute the extra allowance of costs to plaintiff of 5 per cent. on the entire sum claimed in the counterclaim.

Appeal from trial term, Onondaga county.

This action was commenced May 18, 1894, by Edward P. Bates against the Fish Bros. Wagon Company, a manufacturing corporation, to recover the balance alleged to be unpaid on contracts for the furnishing and installation of a steam-heating apparatus in the buildings comprising the defendant's manufactory in Racine, Wis. The heating system was put in in pursuance of two contracts made in the fall of 1892, and the price, complete, to be paid the plaintiff, was the sum of $5,900. The system was completed February 15, 1893, and was tested and accepted at that time. Payments had been made to the plaintiff during the progress of the work, and on the 22d day of May, 1893, a promissory note of $500 was given to apply on the contract price, due in six months, which was paid at maturity by the defendant. This left unpaid $650, and this action was brought to recover that sum and $74.83 for goods sold to the defendant during the setting up of the plant. Accompanying the written contracts were specifications as to the heating system, and the manner of doing the work, and they also contained a guaranty, among other things: "That

the apparatus shall be of ample capacity to heat all of the rooms with which it is connected to the following temperature, when the thermometer outside registers ten degrees below zero, with a pressure of steam not exceeding three (3) pounds at the tank: Work room, sixty (60) degrees Fahr. Living and sleeping rooms, to ——— degrees Fahr. Other rooms, to ——— degrees Fahr. Office rooms, to seventy (70) degrees Fahr. Trimming rooms, to seventy (70) degrees Fahr. Paint and varnish rooms, to seventy-five (75) and eighty (80) degrees Fahr." The defendant interposed, in addition to denials, a counterclaim alleging a breach of this guaranty, and that the system failed to supply heat according to the warranty, and also for special damages which it is claimed the defendant incurred by reason of the failure of the plaintiff to comply with his contract. The referee allowed the defendant on its counterclaim the sum of $450, and the same was deducted from the amount unpaid on the contract price. The special term granted an extra allowance to the plaintiff, and computed the same upon the entire sum claimed on the counterclaim in the answer, thus making the sum allowed at 5 per centum $313.74, although the sum actually recovered by the plaintiff was only $274.79. Defendant appeals. Modified.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Thomas M. Kearney, for appellant.
Frank Hiscock, for respondent.

SPRING, J. The plan of the plaintiff required the heating of the defendant's factory buildings with live steam coming automatically and directly from the boiler. The engine and boiler were furnished by the defendant, and it therefore devolved upon it to supply sufficient steam to make the system of the plaintiff a success. The hot steam came to the furnace rooms through pipes, and was distributed by coils of pipe placed near the ceiling of each room. If ample steam was furnished, and if the plant was free from inherent defects, the capacity of the apparatus depended upon the radiating surface of these coils. The apparatus involved no especial novelty, either in design or mechanism, but was of a kind in quite general use, and this system had been installed successfully in many factories and buildings. The plant was evidently satisfactory to the defendant when completed, but it is contended that at that time, and during the residue of that winter season, no proper test could be given of the efficiency of the system, as there was no severe cold weather; that it was not until the succeeding winter that the weather was sufficiently cold to show the lack of capacity in the system to furnish adequate heat according to the warranty accompanying the contract. It is plain that the burden was upon the plaintiff to establish that he had substantially performed his contracts precedent to any recovery of the purchase price. This he did primarily by showing the putting in of the system, its test to the satisfaction of the defendant, the acceptance by the latter, and the payment on the purchase price several months after it began using the apparatus. This, however, was not an absolute acceptance preventing the defendant from rescinding the contract, and returning the machinery and appliances to the plaintiff, if, at the time of the first test, the quality and capacity of the plant could not have been determined. But if, later on, the defendant ascertained this system was insufficient, it was, in fairness, charged with the duty to apprise plaintiff

of the defective condition, if it sought either to rescind the contract or to hold him for special damages. It could not, after discovering the insufficiency of the plant, continue its use without complaint to the plaintiff, and then claim there was no acceptance on its part. Chambers v. Lancaster, 160 N. Y. 342, 54 N. E. 707; Ellison v. Creed, 34 App. Div. 15, 53 N. Y. Supp. 1054; Brown v. Foster, 108 N. Y. 387, 15 N. E. 608. If the inadequacy were not attributable to inherent defects, or to an inefficient system, but could be remedied by the addition of a few coils, or some other slight addition involving no impairment of the plant, then plaintiff should be given an opportunity to supply what was required. The defendant could not accept and enjoy the use of the plant and still repudiate the agreement. The rule of damages for breach of express warranty in cases where there has been an acceptance of the goods warranted adopted in Wisconsin, where the contract was made and performed, as well as in our own state, is that the vendee is entitled to recover the difference between the actual value of the article delivered and what its value would have been had it conformed to the warranty. Boothby v. Scales, 27 Wis. 626; Bank of North Collins v. Cary Safe Co., 42 App. Div. 233, 59 N. Y. Supp. 643. There is no controversy over this rule of damages, and the referee recognized its existence. He found that the defendant accepted the plant, and that is justified by the testimony, as it continued to use it without complaint to the plaintiff, after the defendant understood fully that the system had failed to give forth adequate heat. This left the defendant to its remedy for damages accruing by reason of the breach of the express warranty. Briggs v. Hilton, 99 N. Y. 517, 3 N. E. 51. The referee found specifically that the plaintiff "fully performed said contract in all respects; said heating apparatus works properly; a circulation of steam is maintained throughout the pipes with a pressure at the tank, as provided by the contract"; that the number of coils "have been substantially supplied"; that the failure to get the required heat is due either to the failure by the defendant to furnish sufficient steam or to lack of coils; that the radiating surface can be augmented by the addition of coils without disturbance to the operation of the plant, and this would bring the heating capacity up to the guaranty, and at a cost of $450. The appellant's counsel criticises this finding, in that it is in the alternative, and does not find specifically to what the inadequate heat is chargeable. The criticism technically is a just one, but the defendant cannot complain, for the award of damages on the counterclaim is on the hypothesis that the defective condition was due to the lack of coils. If it is on account of the omission of the defendant to furnish steam, then no damages should be imposed upon the plaintiff. Then the referee finds that the "apparatus is worth $450 less than it would be if it were of ample capacity to heat all the rooms with which it is connected as provided by said contracts," and under the steam pressure and with the temperature outside covered by the guaranty. These findings involve no serious infringement upon the elementary rule referred to fixing the measure of damages in this class of cases. To paraphrase his report, he, in effect, finds: That the system in-

stalled complied with the specifications, in that it was free from
inherent fault, and that the work was well done; that, perhaps·.
through a misconception of the rigor of the climate, or the poor con-
struction of the defendant's frame buildings, he miscalculated the
extent of the radiating surface required to heat them properly. This
underestimate did not signify any impairment of the efficiency of
the plant itself, but additional coils were required to bring it up
to the guaranty, and that addition was a simple matter, the expense
of which was readily ascertainable. The situation confronting the
referee demanded that he allow the defendant the full measure of
damages accruing to it by reason of the breach of the express war-
ranty, and still enable plaintiff to recover what the plant was fairly
worth. That rule was fair to the defendant. It recognized his
acceptance of the system, but held that the cause of action for
failure to comply fully with the guaranty survived such acceptance,
and the referee certainly endeavored to mete out that justice to
both parties. What it will cost to bring the plant up to the full
measure of the plaintiff's guaranty covers the loss to the defend-
ant, and is, in effect, making the basis of the damages the differ-
ence between the actual value and the value if it had corresponded
to the guaranty. That measure is no more speculative than the
opinions of the witnesses in any case, who fix a value upon an article
of this cumbersome kind in actual use. Mr. Savage, an expert on
behalf of the defendant, had· testified that it would require an ex-
penditure of $1,500 to $2,000 "for the apparatus to do the work,"
while the cost was way below this if the plaintiff's witnesses are
correct in their estimates. In any event, the referee has taken
the highest sum given by the witnesses for the plaintiff, and it is
not for this court to interfere with his deduction, as long as it is sup-
ported fairly by the evidence. Competent experts may have a dif-
ferent, and yet proper, way of arriving at the difference between
the value of an article actually and if as represented. In this case
the plaintiff's witnesses made the basis of that difference the cost
of supplying sufficient coils to bring the system up to the requisite
standard. The witnesses on the part of the defendant testified to
the value, respectively, of the proposed and of the actual plant.
Each was endeavoring to reach the same result, but not by the same
methods. That the learned referee saw fit to take the evidence of
one class of witnesses in preference to another does no violence to
the rule of damages. The proper measure was stated by the referee
during the trial, and was perfectly apparent, and he has ;substan-
tially adhered to it in his decision; only he gives the method by
which he arrived at it. Nor do we think the₀ defendant was en-
titled to special damages. It kept the plant in operation, and with-
out information to the plaintiff that it intended to claim substan-
tially a rescission of the contract. Had plaintiff been advised of
the difficulty, he could have remedied it; and this is especially true
in view of the conclusion of the learned referee that a few coils would
have made it comply with the guaranty. Losses and expenditures
which are the normal outgrowth of a breach of contract are often
allowable, but not where the person incurring the expense has been

remiss in giving to the one responsible for the breach an early opportunity to make reparation, either by remedying the defective article or by money compensation. The judgment should be affirmed, with costs.

The defendant succeeded in part on its counterclaim, and yet the special term, granted an additional allowance, as if the plaintiff had been successful to the full extent of this counterclaim. If the plaintiff sues on an unliquidated demand, claiming to recover $10,000, and recover $1,000, the defendant would not be entitled to an extra allowance of costs on any sum, much less on $10,000.

The order granting the extra allowance should be modified by allowing the same at $13.74, with $10 costs and the disbursements of the appeal from the order to the appellant. All concur.