PETERSON v. EIGHT HUNDRED AND SIXTY-NINE CEDAR LOGS.

(District Court, S. D. Alabama. January 18, 1904.)

1. SHIPPING—CONSTRUCTION OF CHARTER PARTY—MEASUREMENT OF ROUND LOGS.

A schooner contracted for a lump sum of $720, as freight to carry from a Cuban port to Mobile "round cedar logs, to consist of 60,000 feet." It appeared that there were two methods of measuring round logs, one of which was to square them, and so compute their contents, and the other to compute their entire contents as round logs. By the testimony of persons engaged in the shipping and timber business in Cuba, where the charter was made, it was shown without material contradiction that it was the custom in shipping from there to take the invoice measurements in which the logs were reduced to square measure as the basis for computing freight, and to add $2 per thousand feet to the freight to United States ports where the logs were round. It was also shown that the highest rate of freight paid to such ports for squared logs at the time of the contract was $10 per thousand feet. *Held*, that in the absence of any designation of the method of measurement in the contract it must be presumed to have been made with reference to such custom, especially in view of the stipulated rate of $12 per thousand feet.

In Admiralty. Suit to recover balance of freight.

Gregory L. and H. T. Smith, for libelant.

Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge. The freight due the shipowner for carrying and delivering goods is sometimes payable according to the weight or measurement of the cargo, and sometimes payable in a lump sum. 7 Am. & Eng. Encyc. of Law (2d Ed.) 251. By the contract in this case the freight was payable in a lump sum, and the cargo to be carried from Santa Cruz, Cuba, to Mobile, Ala., was "round cedar logs, to consist of 60,000 feet." The freight was payable in a lump sum of $720, not for a part cargo of round cedar logs, but for 60,000 feet of such logs. The libelant was paid the $720, on delivery in Mobile of a part of the cargo of logs; but he refused to deliver the balance of the logs without a further payment of freight thereon, claiming that the cargo of logs largely exceeded 60,000 feet in measurement.

It was undisputed on the evidence that the measurement of the logs, by the method of squaring them to ascertain their contents, was 60,454 superficial feet, and that the measurement of the entire contents of the logs as round logs was considerably more—how much more does not appear from the evidence. However, it was conceded that there are at least two methods of measuring round logs and ascertaining their contents in feet, which are essentially different. One or the other, and not both, must have been in the mind of the parties at the time the contract for the shipment and transportation of the logs in question was entered into. The contract, by its terms, is silent as to the method of measurement. Extrinsic evidence must, of necessity, be resorted to in order to find out whether it was 60,000 feet according to the one or the other method; and "what extrinsic evidence is better to ascertain this than that of usage?" Parties who contract on a subject-matter concerning which known usages prevail by implication incorporate them into their agreement, if nothing is said to the contrary. Barnard

v. Kellogg, 10 Wall. 383, 19 L. Ed. 987; Robinson v. U. S., 13 Wall. 363, 20 L. Ed. 653; Seagar v. N. Y., etc., Mail S. S. Co. (D. C.) 55 Fed. 324. In determining upon what measurement freight is to be calculated, the usage in the particular trade to which the contract relates may be considered if the stipulation in the contract is ambiguous. 7 Am. & Eng. Encyc. of Law (2d Ed.) 189.

The libelant testified that there was no custom in the trade between Cuba and Mobile or elsewhere to calculate the contents of round timber upon the basis of the measurement of the timber after it is squared. He, however, stated that he had but once before the trip in question transported round logs from Santa Cruz to an American port, viz., to New York, and that the freight charged upon that cargo was estimated according to superficial feet; that the charter party in that instance was for square logs, but he took some round logs as a part of the cargo, and at the same freight, as I understood his testimony, which was $9 per 1,000 superficial feet. He also stated that the prevailing rate of freight on square cedar logs to American ports from Cuba was from $8 to $10 per 1,000 superficial feet; that $8 was the lowest to Mobile; that $9 to $10 was the rate to New York. He gave no rate on round cedar logs. He further testified that before all the logs involved here were delivered to him he thought he had about his complement of logs, and he so told the shippers. But it does not appear that he had the logs measured at that time, or that he made any inquiry as to the method by which they were measured. He did not refuse to receive and transport the balance of them, but did in fact receive and put aboard his vessel all the logs delivered to him, being 869 in number. The libelant further testified that he said to the shippers that he would measure the logs when delivered, and if there were more than 60,000 feet they would have to pay for it. When the bills of lading were presented for signature libelant objected to signing them, as he says, on account of the number of feet, but did sign them with the indorsement thereon, "Measurement unknown." It does not appear that at that time he raised any question as to the basis or method of measurement, or that he said anything about the difference between the measurement of round and square logs. The bill of lading was for 869 logs of round cedar, measuring 60,454 superficial feet.

Witness Benemelis, a witness for claimant, testified that he was for many years engaged in the lumber and timber business in Cuba, and that he knew the customary mode of measuring round logs so as to put them into feet, which method he described; that in buying, selling, or shipping round timber the custom was to reduce round logs to square measure, and thus ascertain their contents in superficial feet, according to the rule or mode described; that sometimes in shipping it might be agreed between the shipper and the vessel that the cargo was to be taken by weight, and the freight based thereon, sometimes for a lump sum, and sometimes by measurement—so much per 1,000 feet—but when by measurement it would be by reducing the round logs to square measure; that this was the universal custom, if the freight was based on measurement.

Witness Prats, a witness for claimant, had been a ship broker for 30 years, doing business in Havana. He testified that the custom there

was to take Cuban invoice measurement as a basis on which to assess the freight for square logs, and that the freight on round logs was, according to the custom, $2 per 1,000 feet additional; that the custom at the time of this charter was that Cuban invoice measurement was to be taken as the basis of freight; and that was the basis of the lump sum freight agreed on in this charter party. Witness stated that the charter was effected through his intervention, and that he was present when it was made. The testimony of witness Labrada, as far as competent evidence, tends to corroborate Prats' testimony.

It appeared that the invoice measurement of the logs was 60,454 superficial feet, being found by reducing the logs to square measure. On arriving at Mobile the libelant was paid $720, the amount of freight stipulated for in the charter party, and was tendered an additional sum as freight on the excess of feet over 60,000, at the rate specified. This was refused by the libelant, and this suit followed.

Discarding what I consider incompetent evidence, because hearsay, irrelevant, or immaterial, I think the foregoing statement of the evidence, as to the material facts of the case, is substantially correct.

Benemelis testified that in shipping round timber the custom in Cuba and all Cuban ports with which he was familiar was to reduce round logs to square measure, and thus ascertain their contents in superficial feet. The libelant stated in so many words that there was no such custom; but he did not state whether there was a custom of any kind in reference to the measurement of logs in Cuba on which freight on shipments of logs was based, or what means he had of knowledge on the subject. He had once prior to the shipment involved in this suit transported from Cuba to an American port some round logs, and in that case they were reduced to square measure, and the freight paid on them as such, the same rate as on the square timber, there being both square and round timber in the cargo. Prats corroborated Benemelis in that he testified that there was in Cuba a custom to take Cuban invoice measurement as a basis on which to assess the freight on square logs, and also testified that there was a custom to pay $2 per 1,000 feet additional as freight on round logs. This evidence of Prats is not denied by any evidence in the case. On the contrary, I think other facts and circumstances shown tend to support it. The evidence showed that freight on square timber from Cuban to American ports was from $8 to $10 per 1,000 superficial feet; that the freight to New York was from $9 to $10 per 1,000 feet, and to Mobile from $8 to $9.50.

That the parties agreed on the freight stipulated for in the charter party, which was at the rate of $12 per 1,000 feet, is strongly persuasive, if not conclusive, that they had in mind the custom referred to by Prats, which was that the invoice measurement was taken, and the freight based on such measurement, with $2 additional freight for round logs. It will be observed that they stipulated for the highest rate of freight on square timber, with $2 per 1,000 feet additional freight, aggregating $720.

Why did the shippers agree to pay $2 per 1,000 feet more than the highest rate of freight on square timber from Cuban ports to any American port if it was not because of the fact that the logs were

round? It seems to me that there is no other solution of the transaction. My opinion is that the existence of the custom testified to by the witness Prats has been fully shown. "The proper office of a custom or usage in trade is to ascertain and explain the meaning and intention of the parties to a contract, which could not be done without extrinsic evidence." Barnard v. Kellogg, 10 Wall. 383, 19 L. Ed. 987; and "there is no rule, in the nature of a rule of law, that a usage cannot be established by a single witness." Robinson v. U. S., 13 Wall. 363, 20 L. Ed. 653.

I think the libelant is entitled to freight on the 454 feet in excess of the 60,000 feet of logs contracted for at the rate of $12 per 1,000 feet, being $5.44, but, the same having been tendered him before suit was brought, the decree will be without cost in his behalf.

Let a decree be entered accordingly.