THE MARY N. BOURKE.

(District Court, W. D. New York. February 27, 1905.)

1. SHIPPING—CONTRACT FOR REPAIRS—CUSTOM OF MEASUREMENT.

Where it was the custom of a shipyard to add an arbitrary per cent. to the net measurement of timber used in repairing vessels, for wastage, a contract with such yard for making repairs to a vessel will be presumed to have been made with reference to such custom, in the absence of evidence to show otherwise.

2. SAME—ADJUSTMENT OF ACCOUNT.

An account for materials and labor furnished in the repairing of a vessel considered and adjusted.

3. SAME—DEMURRAGE—BASIS FOR ALLOWANCE.

The owner of a vessel cannot recover demurrage from a repairer on account of delay in completing the repairs, in the absence of contract, and of evidence showing an actual loss, or what her earnings during the detention would probably have been.

[Ed. Note.—Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

In Admiralty. Suit in rem to enforce lien for repairs.

Clinton & Clinton, for libelants.
Tarsney & Fitzpatrick, for respondents.

HAZEL, District Judge. This is a libel in rem, based upon the statutes of the state of Michigan, to recover the sum of $20,255, balance due for rebuilding, repairing, docking, and equipping the schooner Mary N. Bourke, owned by George Nester and others, between May 7 and September 20, 1902. The reasonable value of such work performed and materials furnished is alleged to be $25,-255, on account of which respondents paid on August 4, 1902, the sum of $5,000. The libelants are copartners owning and operating a

dry dock at Bay City, Mich. At West Bay City, not far distant across the Saginaw river, the libelant James Davidson, individually, conducts a shipyard and dry dock. It appears that for a portion of the work performed upon the barge, namely, that of removing old and supplying new rails, and putting in steel arches, the price of $2,800 was agreed upon in writing. As to the major part of the repairs, no written agreement or memorandum was made. The defenses are excessive and erroneous charges for labor, lay days, and materials; and, in addition thereto, respondents claim to have sustained an actual loss on account of demurrage. The answer also alleges that the reasonable value of the repairs and alterations to the barge was about the sum of $15,000.

The necessity for extensive repairs to the Bourke is conceded, for on April 26, 1902, while on a voyage from Duluth, Minn., to Tonawanda, N. Y., loaded with lumber, she collided with the schooner George Nester and stranded off Marquette, Mich. The injured vessel was taken to libelants' dry dock, at Bay City, for repairs. Upon her arrival a survey was made, in behalf of the owners and the underwriters, to determine the loss. The surveyors estimated that the cost of repair and equipment would amount to $13,405. A supplementary report was made by them, showing the necessity for replacing the mast, which was not included in the original survey. The answer further alleges that respondents relied upon the survey, and that libelants stated that the repairs would not cost near as much as had been anticipated. The evidence, however, does not show that the libelants were parties to such survey, and the court does not understand that respondents claim the libelants were bound thereby. The only significance attaching to this testimony is that it may be considered to show the nature and extent of the injuries to the barge, as well as the repairs which were necessary to put her in seaworthy condition. The bill of particulars specifies the items of work and materials furnished by libelants, and the charges therefor. Neither the extent nor the making of the repairs, other than those specified in the written contract, is disputed. That they were skillfully made is conceded, and no fault is found with the materials used. What was the reasonable value of the repairs and materials furnished? Was the work upon the vessel unreasonably delayed, and did the claimants suffer loss by such detention?

Giving due weight to the evidence of respondents' witnesses who testified to the character of the repairs, the timber required, and the labor employed, I conclude that a reasonable deduction must be made upon the various items hereafter enumerated. The evidence on the part of claimants shows that the master of the Bourke, Capt. Hanley, who, in the capacity of their superintendent, was present on the vessel while the repairs were being made, kept a daily record of the work performed, together with the lumber and materials used. Libelants challenge the detailed statements of this witness on the ground that some of the materials were furnished and a portion of the work performed before he began to keep his tallies or records, and, further, that his measurements of timber were not made at West Bay City, the place of shipment. It is claimed that

the measurements of libelants' witnesses were made at that point, and therefore are entitled to greater reliance. An examination of the testimony of Hanley and his tallies indicates that they were carefully kept, and in some particulars they agree with those of libelants' employés. The record shows, however, that libelants had several men employed at keeping tallies. These are agreed as to the amount of work and materials furnished. Hence the court is not prepared to accept the records of the witness Hanley as absolutely reliable, to the entire exclusion of libelants' books. Some evidence is given tending to show an overcharge in prices and quantities. The basis for such claim regarding the timber rests largely upon the method of measurement; that is, whether so-called log measurements should indicate the quantity or the product of the log after it was sawed into timber. Evidence was given at the trial showing two methods—the Doyle and Scribner—of measuring round logs to ascertain the number of feet contained in them. A discussion of the evidence regarding these rules of measurement is not deemed essential. It was libelants' custom to add an arbitrary 25 per cent. to the net measurements of the timber for wastage in manufacture. Libelants' method of measurement and arbitrary charge for wastage, in the absence of any designation of a different rule or arrangement as to prices charged, will be presumed to have been the understanding of the parties. It has often been held that "parties who contract on a subject-matter concerning which known usages prevail by implication incorporate them into their agreement, if nothing is said to the contrary." Peterson v. Eight Hundred and Sixty-Nine Cedar Logs (D. C.) 127 Fed. 869; Barnard v. Kellogg, 10 Wall. 383, 19 L. Ed. 987, and cases cited.

Libelants make a charge for timber and planking as follows:

| | | | |
|---|---|---|---|
| 36,023 feet of | oak, at $45 per M | | $1,621 04 |
| 34,935 " " | Norway, 40 to 60 ft., at $45 | | 1,572 08 |
| 32,093 " " | pine, 40 to 60 ft., at $45 | | 1,444 19 |
| 8,830 " " | docking, at $40 | | 353 20 |
| | | | $4,990 51 |

Respondent insists that the testimony of the witnesses Hanley and Williams shows that only 73,591 feet of timber was used; but, as already intimated, the tallies of Hanley are not entitled to outweigh libelants' evidence upon this point, nor, indeed, can the testimony of the witness Williams be given the importance contended for. His estimate of the lumber furnished and work performed is based entirely upon the survey hereinbefore mentioned, and an inspection of the barge after the work was entirely completed. Such opinion evidence, in my judgment, does not merit the weight that must be given to the libelants' witnesses, who were actually present during the progress of the work, and kept record of the details thereof.

The measurements of the timber are allowed as charged, except that a deduction is made from the oak of 4,212 feet on account of contract work; the evidence not being clear that any deduction was made for lumber furnished for that purpose. There is evidence

tending to show that the prices charged for the lumber were excessive. It is thought that a reduction of the prices to $40 per M for oak, Norway, and pine, and $35 per M for docking, is fair and reasonable. The allowance for timber, therefore, is as follows:

| | | | |
|---|---|---|---|
| 30,759 feet of oak, at $40 per M | | | $1,230 36 |
| 34,935 " " Norway, at $40 per M | | | 1,397 40 |
| 32,092 " " pine, at $40 per M | | | 1,283 50 |
| 8,830 " " docking, at $35 per. M | | | 309 05 |
| | | | $4,220 31 |

Delay in the work occurred at different times, and the expense for the lay days must accordingly be reduced. The evidence does not indicate that there was an agreement, as claimed by respondents, that the work should be completed in three or four weeks, or within any specified time; nor was the delay of such a nature as to warrant the inference that the vessel was detained because of the carelessness or negligence of libelants. Complaints of delay were frequent, and some evidence was given tending to show that an insufficient number of workmen were employed at different times in completing the repairs. The estimate of respondents' witnesses that there was an unreasonable delay of 50 days is not persuasive, although the work of repairing the barge might have been hurried. Giving consideration to all the evidence upon this point a deduction of 20 lay days would seem proper and just. This would reduce libelants' charge for lay days from $4,416 to $3.312.

The amount charged for labor, including gains and profits, is $9,882.82; the actual cost thereof, according to libelants' testimony, being $7,552.93. I think a profit of 20 per cent. is reasonable and just, and therefore the amount charged for labor is reduced from $9,882.82 to $9,063.51.

Respondents claim that the profit and gain charged on an expenditure of $1,149.60 for certain materials, tools, etc., furnished, amounting to $556.20, is excessive and unreasonable. The proofs show that the libelant James Davidson sold the articles mentioned to the firm. There is no substantial reason for denying a reasonable profit to the seller of these materials, as well as to the libelants, who used them in making the repairs. The libelant James Davidson, on cross-examination, testifies that a profit of 15 per cent. would not be excessive, and that he stood ready to accept such an estimate of profit. Undoubtedly he had in mind a clear net gain of 15 per cent. over and above all expenditures. In estimating an allowance of gains and profits, regard must be had for the general expense of maintaining the dry dock. I think $200 a proper deduction from the estimate of gains and profits on these materials, making the allowance therefor the sum of $1,505.80. The amount of $50 is allowed for rigging bands, instead of $60, as charged, and $12 for pitch, instead of $20, as charged. The items enumerated in subdivision 2d of respondents' brief, consisting of wedges, files, etc., charged at $144.85, are disallowed, as is also the charge of $15.53 for hoisting line. The charges of $27.31 for connecting pony engine, and $60 for jig sawing, are disallowed. The item of round

iron, at quantities charged, is reduced from $472.63 to $400. The item of spike is allowed at $400, instead of $486.40.

The counterclaim of respondents remains to be briefly considered. The evidence falls short of establishing that there was an actual loss of earning capacity of the barge, nor does it sufficiently appear what her net earnings during the detention would probably have been. The Conqueror, 166 U. S. 133, 17 Sup. Ct. 510, 41 L. Ed. 937. Hence no offset as a result of detention is allowed. The charges for the various other items not mentioned herein are allowed.

A summation of the evidence warrants the conclusion that the libelants are entitled to recover the sum of $16,936.77, with interest from April 1, 1904, the time when the briefs herein should have been filed with the court, together with the costs of the action.