THE VENEZUELA.

(District Court, W. D. New York. September 11, 1909.)

1. ADMIRALTY (§ 36*)—REMEDIES—COUNTERCLAIMS.

In a suit against a steamer to recover for machinery supplied her, a counterclaim for damages for breach of the contract under which it was supplied is maintainable.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 327; Dec. Dig. § 36.*]

2. MARITIME LIENS (§ 5*)—REPAIRS FURNISHED TO OWNER—IMPLIED AGREEMENT FOR LIEN.

A tacit understanding by both parties that one furnishing repairs to a vessel in a foreign port, although they were ordered by the owner, looked to the vessel for payment, is sufficient to establish an implied agreement for a lien.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 7; Dec. Dig. § 5.*

For supplies and services, presumption as to credit to vessel, see note to The George Dumois, 15 C. C. A. 679.]

3. SALES (§ 267*)—CONTRACT FOR FURNISHING MACHINERY—IMPLIED WARRANTY.

A provision, in a contract to furnish and install furnaces, that they should pass government inspection, did not relieve the contractor from the implied warranty that the work should be properly performed and the furnaces reasonably fit and free from such defects as would be only discoverable after use and trial.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 760, 761; Dec. Dig. § 267.*]

4. CUSTOMS AND USAGES (§ 13*)—CONSTRUCTION—IMPLIED TERMS.

A common and well-known custom or usage in respect to the subject-matter of a contract may be read into it as an implied term.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 26; Dec. Dig. § 13.*]

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. SALES (§ 288*)—PERFORMANCE—WAIVER OF BREACH OF WARRANTY.

Where furnaces installed by libelants in respondent's lake steamer proved defective as soon as used, and were repaired by libelants, their continued use thereafter for four months without complaint, and after being again repaired to the close of the season, was a waiver of the right to insist that they failed to comply with the implied warranty of their fitness.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 817–823; Dec. Dig. § 288.*]

6. SALES (§ 418*)—BREACH OF CONTRACT—REPAIR OF VESSEL.

Where furnaces installed in a steamer under contract failed to work properly, and the vessel was detained while they were being repaired, but there was no claim that the contractor knew of the defect, the owner of the vessel is not entitled to recover from the contractor as damages for breach of the contract the earnings which she lost by reason of the delay for repairs.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

In Admiralty. Action by William M. Tashenberg and Fred Tashenberg against the steamer Venezuela. Decree for libelants.

Norton Bros. and John B. Richards, for libelants.

Clinton & Clinton and George Clinton, for claimant and cross-libelant.

HAZEL, District Judge. This is a libel in rem to recover a balance due for work and labor performed upon the steamer Venezuela, and furnishing said steamer, pursuant to written contract, two furnaces with cast-iron fronts, together with breeching and smokestack, at the agreed price of $2,963; also for supplying a new blowpipe for the boiler, amounting to $90; and for extra work performed and money expended in subsequently repairing furnaces at the ports of Cleveland and Bay City. The Davidson Steamship Company, claimant, has filed a cross-libel in personam, alleging a breach of contract, in that the work of fitting the steamer with new furnaces was not performed in a proper and workmanlike manner; that the furnaces constantly leaked, causing a loss of time and delay in the steamer's navigation and trips. Such a counterclaim, when it is shown to relate to matters contained in the original libel, and where the claims of the libelant and cross-libelant arise out of the same transaction, is unquestionably maintainable under admiralty rule 53. The Highland Light (D. C.) 88 Fed. 296; The Electron (D. C.) 48 Fed. 689.

It is claimed by the cross-libelant that credit was not given the vessel, and therefore no lien was created for the services performed or the materials furnished. The facts and circumstances, however, sufficiently show that the manufacturers of the furnaces looked to the vessel, and not to the owner, for compensation for their entire services. There certainly existed a tacit understanding that the Venezuela should be bound, and that libelants should have a lien for their labor performed and materials furnished. The Newport (D. C.) 107 Fed. 741; The Gracie May, 72 Fed. 283, 18 C. C. A. 559. We may now consider the case on its merits.

The particular fault with the work performed on the furnaces is claimed to have arisen from defective riveting of the inner end to the flange of the flue sheet. The furnaces were 8 feet long and 42 inches in diameter, and of the pattern or style known as the "straight end furnace." It was necessary, to properly and securely fit them in place, not only to join their ends to the flue sheets, but to caulk the joints to enable resisting the heat of the fire and withstand the pressure from water. The proofs show that after the furnaces were installed in the boiler of the steamer in the spring of 1906, and before the steamer departed for her trip, the work was examined by government inspectors, who tested their capacity and found them to be free from leakage or defects. The contracts contained a postscript requiring the work to pass government inspection. Such inspection or test, however, cannot be considered to relieve the libelants from liability on their implied warranty that the work under the contract would be properly performed and free from such defects as were only discoverable after use and trial. Osgood Carleton et al. v. Lombard, Ayres & Co., 149 N. Y. 137, 43 N. E. 422. The libelants were certainly called upon to perform their work of riveting in such a way as to make the furnaces reasonably fit for the purposes intended, and they cannot be permitted to claim that, merely because the hydrostatic test did not disclose latent defects or leakage, the work was properly and practicably done.

The proofs are that within 6 hours after the departure of the vessel from the port of Buffalo on her voyage up the Lakes on April 25, 1906, the furnaces leaked badly at the joint where the flue sheets were connected to the ends of the furnaces, and in consequence thereof the steamer was obliged to put in at Cleveland for repairs. There she was partially repaired by Mr. Maher, a boiler maker, who was subsequently relieved by the libelants with the sanction of claimant. Libelants completed the repairs, which delayed the Venezuela for about 10 days, when she again started and completed her trip. No complaints of faulty workmanship or leakage were thereafter made to libelants until August 30th, when they were notified by claimant that the furnaces again leaked. Between the time of re-riveting and alterations in parts of the furnaces at Cleveland and the last-mentioned date, a period of 4 months, the Venezuela was constantly engaged in her business of transporting merchandise, and libelants had no reason to suppose that the work continued unsatisfactory, or that the furnaces did not adequately perform their functions. On September 1, 1906, the libelants, at the request of the owner of the Venezuela, went to Bay City to inspect the furnaces, and, if necessary, to make further alterations and repairs. In a conversation with Mr. Davidson, the president of the claimant, the witness Tashenberg, one of the libelants, stated that, as the steamer used a Howden apparatus to induce a draft in the furnace, it would not be possible to keep the riveted joints at the end of the furnaces absolutely secure from leaks without the use in the furnaces of a fire-brick arch. Mr. Davidson, however, insisted that under the contract the libelants were required to perform their work without leakage and without the necessity of using fire brick.

Testimony has been introduced tending to show that it was common experience for leaks to develop at such joints in straight end furnaces using the so-called Howden draft, soon after firing the furnaces, in the absence of a fire-brick protection. Upon this subject there is much conflict of testimony; the cross-libelant claiming that a fire-brick arch was not essential to the efficient use of the furnaces. If there was a common understanding at the time of making the contract relative to the use of a fire-brick lining or arch in connection with the furnaces and induced draft of the type used by the Venezuela, such usage, custom, or common understanding may be read into the contract as accompanying it by implication. Peterson v. Cedar Logs (D. C.) 127 Fed. 869; The Mary N. Bourke (D. C.) 135 Fed. 895. But, whatever probative force such testimony tending to establish a customary usage might ordinarily be entitled to receive, it has, I think, been negatived by the action of libelants in proceeding to Cleveland and Bay City for the express purpose of alterations or repairs, without a clear understanding that they would regard such work as extra or additional to that originally done. The evidence convincingly shows that the original leakage was due to failure to use proper rivets, or such as would have the required bearing on the plate. There is evidence to show that the joined sheets were not up, and that in a few instances the rivet holes were not opposite or fair. The original work was not such as to prevent leaking without the use of fire brick at the joints.

Libelants claim that from the beginning of the work they repeatedly stated to the engineer of the Venezuela and to Mr. Davidson that the Howden draft, which was used by the steamer, induced draft which would furnish heat of such intensity that, to protect the joints, a fire-brick arch in the furnaces would be required. Nothing, however, was stated at the time of making the contract to indicate that fire brick for the interior of the furnaces was necessary to protect the joints, and, moreover, libelants knew that the owner of the Venezuela objected to its use. In this connection I may state that claimant's reason for declining to use fire brick, on the ground that it would result in diminishing the draft area of the furnaces, with consequent loss of efficiency, is not thought of conspicuous consequence. It is probably true that the draft would be somewhat reduced, but the extent thereof would be negligible. However that may be, it appears by the evidence that the vessel has continuously used the furnaces with and without the use of a fire-brick arch from the time the repairs were made at Cleveland until the vessel was dry docked in September at Bay City. Subsequently she continued the use of the furnaces until the month of December, 1906, when the season of navigation ended. In these circumstances I am of opinion that there was an acceptance of the furnaces and the workmanship which is the subject of this controversy by the claimant, and it became liable for the contract price.

It is well settled that the purchaser of a manufactured article may have a reasonable opportunity for inspection and examination before rejecting the article bought; but, as I understand the law, he is not permitted to use and retain the article known by him to be defective,

and not to be within the terms of the contract, without paying therefor. He cannot use the article until such time as he has no further use for it, and then reject it, even though his complaints that the article was unsatisfactory were not infrequent. That fault was found in September, four months after repairs were made on the furnaces at Cleveland, and again in November and December, toward the close of navigation, is unavailing, and claimant by its conduct has waived any failure on the part of the libelants to more completely comply with the implied warranty of fitness. Brown v. Foster, 108 N. Y. 387, 15 N. E. 608; Ellison v. Creed, 34 App. Div. 15, 53 N. Y. Supp. 1054; Bates v. Fish Bros. Wagon Co., 50 App. Div. 38, 63 N. Y. Supp. 649.

I have examined the cases cited by counsel for cross-libelant. They uphold the view that where a contract to furnish a stated quantity of goods at a specified time is broken, and the quantity delivered is less than that required by the agreement, there is a bar to an action for the price of the goods delivered; and where a contract, for instance, was to complete a building before payment, and there was a failure to complete, the builder could not recover for his work and materials, even though the owner occupied the building. In these cases performance was a condition precedent to delivery of the property; but such conditions did not exist with reference to the furnaces here in question, which the claimants could legally have rejected immediately on ascertaining their imperfections.

The claimant maintains that it is entitled to recoup its loss of earnings for detention at Cleveland while repairs were being made there; but I do not think that the gains and profits that the Venezuela might have made during this period are recoverable as damages. Blanchard v. Ely, 21 Wend. (N. Y.) 342, 34 Am. Dec. 250; Cassidy v. Le Fevre, 45 N. Y. 562; Horner v. Wood, 16 Barb. 386; Brauer v. Oceanica Steam Nav. Co., 34 Misc. Rep. 127, 69 N. Y. Supp. 465. In such a situation as here, the damages that the injured party may recover are the difference between the actual value of the furnaces and work performed in installing them and what such value would have been if the furnaces and work were in complete accord with the implied warranties of performance and fitness; or the injured party, if he so elects, may recover the cost and expenses for making the furnaces fit and proper for the purposes intended. It is not contended that libelants willfully refused to install proper furnaces, or failed to finish the work within a stipulated time, or abandoned; or left it partially performed, necessitating completion by some other person. On the contrary, the proofs are that on several occasions they, at cross-libelant's request, endeavored to remedy the defects and leakages.

Reliance is placed by counsel for claimant on The Nimrod (D. C.) 141 Fed. 215, to substantiate recovery of probable earnings of the vessel during her detention while being repaired. In that case the defects in the boiler were known to the manufacturer and not known to the boat, and in the estimation of the court this was a circumstance entitling the cross-libelant to special damages by reason of the breach. In the other cases cited the detention for repairs arose from collisions or other maritime torts, and such cases are not applicable to facts

which, as in the present case, indicate a fair supposition that the only damages that were in contemplation by the parties at the time of making the contract were such as would naturally flow from a breach thereof. Howard v. Stilwell & Bierce Mfg. Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147; Fleming v. Beck, 48 Pa. 309.

It follows, from the foregoing, that the libelants are entitled to recover the balance due them under the contract dated January 12, 1906, with the additional sum of $90 for smokestack on pony boiler, and the sum of $132.96 for extra work not disputed, deducting therefrom, however, the counterclaim of cross-libelant for meals furnished to workmen at Cleveland, amounting to $20.25, and the amount paid or incurred for repairs to the furnaces at Cleveland and Bay City, aggregating $465.55. Libelants' claims for extra work, amounting to $747.25, and expenses in going to Bay City, are disallowed. The claims of cross-libelant for loss of use of the vessel, amounting to $1,496.39, and for wages of seamen while the vessel was delayed pending repairs, amounting to $264.27, are disallowed.

Decree may be entered accordingly, without costs to either party.

In the above I have assumed that the vessel became liable for the repairs at Bay City, though the proofs show an independent contract between maker and libelants. If the vessel did not become liable, the item of $250 for such repairs is disallowed. The liability of the vessel for this item may be shown on settlement of decree.