### ASBESTOLITH MFG. CO. v. KERLEY.

(Supreme Court, Appellate Term. May 19, 1911.)

1. CONTRACTS (§ 295*)—BUILDING CONTRACT—SUBSTANTIAL PERFORMANCE.

Where plaintiff contracted to furnish a specified flooring for defendant's residence, with a warranty that the floors, when laid, would be serviceable, firm, and hard, and it was conclusively shown that after the floors were finished they became soft and discolored, would retain the marks of shoe prints, and were practically useless, there was no sufficient substantial performance to entitle plaintiff to recover the price.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1353-1362; Dec. Dig. § 295.*]

2. CONTRACTS (§ 308*)—BUILDING CONTRACT—ACCEPTANCE OF WORK—PRELIMINARY PAYMENT.

Where a contract for the laying of special flooring warranted that the same, when laid, would be firm, hard, and serviceable, payment of an installment of the contract price at a time when the durability of the work and the firmness of the floor could not be determined was not an absolute acceptance of the work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1463, 1464; Dec. Dig. § 308.*]

3. CONTRACTS (§ 287*)—CERTIFICATE OF CONTRACTOR—AUTHORITY.

Where plaintiff contracted to lay certain special flooring in defendant's residence, and warranted the same to be hard and serviceable when laid, a certificate by the general contractor that the floors had been cleaned and left in good condition was not binding as an admission of the owner, in the absence of proof that the contractor had authority to make admissions of that character binding on the owner.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1308-1351; Dec. Dig. § 287.*]

Appeal from City Court of New York, Trial Term.

Action by the Asbestolith Manufacturing Company against Charles G. Kerley. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before SEABURY, GUY, and BIJUR, JJ.

Olcott, Gruber, Bonynge & McManus (Terence J. McManus and Albert M. Levy, of counsel), for appellant.

Alfred E. Ommen, for respondent.

GUY, J.   The defendant herein appeals from a judgment entered in favor of plaintiff on the verdict of a jury. The action was brought to recover a balance alleged to be due for "asbestolith" flooring furnished by plaintiff to defendant.

[1] The evidence establishes that plaintiff contracted with defendant to furnish materials for and to lay asbestolith floors in defendant's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

residence at Sharon, Conn.   The answer denies the value of the labor and materials furnished, and as matter of defense alleges that at the time the contract referred to was entered into, and as part of the consideration therefor, and as an inducement to enter into the said contract, the plaintiff warranted that the floors would, when laid, be firm and hard and serviceable, and that the same would last for a period of years without having to be replaced, and that in truth and in fact the said floors, when laid, were not hard and firm, and the same were not as represented in that regard; that the said floors, as laid, became soft and discolored; that they retained the marks of shoe prints and were practically useless.   The plaintiff called as a witness the architect, who had been employed by defendant to superintend the construction of the house in question, who testified that samples of the flooring were submitted by plaintiff to defendant before the making of the contract, which samples were—

"hard, firm, serviceable samples * * * for use in a country house. * * * They were fast colors. * * * They were not giving me colors that would fade. * * * They were supposed to be laid in that house to last for years, to hold color, and to hold their firmness; and they were to resist the pressure of the feet on the floors.   They were not to show marks of heels when a person walked on them."

The president of the plaintiff company also testified:

"I sold it as a floor to wear for years, to keep hard and firm, and not to show heel marks or nails, outside of the ordinary wear and tear."

The architect (plaintiff's witness) testified that in the latter part of May, 1908, the laying of the floors had been completed and:

"I accepted the floors as completed.   The work was done in accordance with the specifications.   The work was completed entirely in accordance with this contract.   It was satisfactory to me."

But on cross-examination this witness testified:

"I remember when I told the defendant it was safe to pay $1,000 on account. * * * That payment was made on my recommendation before the floor was entirely finished and accepted. * * * I didn't make any suggestion for final payment.   I allowed $1,000 on account.   I didn't certify to anything."

There was no provision in the contract that the work was to be done to the satisfaction of the architect, or that his certificate, even had he made one, should be conclusive on defendant.   The architect's testimony, therefore, should be given only such weight and credence as it should receive in the light of all the facts and circumstances of the case.

In contradiction of the testimony of the architect that the work was done in accordance with the contract, the defendant offered in evidence a letter, written by the architect in July, 1908, about a month after the laying of the floors had been completed, in which he said:

"Mr. Burnside will remedy the floors, and guaranteed Mrs. Kerley he would leave all in perfect condition."

Defendant also offered in evidence another letter written by the architect on October 5, 1908, three months later, in which he said:

"The only subject which remains to straighten out is the question of refinishing the floors, which Mr. Burnside, of the Asbestolith Company, has agreed to do and will do the moment he returns from his Western trip."

Mr. Burnside, the president of the plaintiff company, testified that prior to July he discovered marks of heels upon the floor; that they were dented prior to that, and in July they were soft.

Defendant's wife, called as a witness by the defense, testified: That she discovered the defective condition of the floors, immediately upon removing the covering, after the furniture had been moved in on June 11th. "When I took the covering off, I observed the floors were discolored. The floors were pitted a little. * * * The floors were just about the same on each floor. * * * I noticed that, when I started to walk, it was very soft. I noticed marks were left on the floors after I walked over them—every mark; everything; the nails· in my shoes." That she called the attention of Mr. Burnside to them after June 11th, and he said "they did not suit him." He would make them good. That she spoke to him again in July, and he said "the floors were not satisfactory, and that the work would be made good later on."

There is no evidence in the case from which it could be found that the defective condition was caused by any improper use of the flooring by defendant or others in defendant's employ. Defendant's wife expressly denied that anything was done by her, or by any of the people employed by her at the house, which caused or could have caused the conditions complained of.

In my judgment, it is established conclusively by the evidence, including the testimony of both plaintiff's and defendant's witnesses, that when the laying of the floors had been completed, and they were given over to the defendant for use in the latter part of May or early in June, 1908, they were in an imperfect and defective condition, unfit for the use for which they were intended, as known to the plaintiff, and not in accordance with the contract in many material respects, and that, when these defects were called to the attention of the plaintiff, it promised to remedy them, but has never done so. It is essential to plaintiff's recovery that it should prove a substantial performance of its contract., This it failed to do.

[2] It is also conclusively established that there was no acceptance of the work by the defendant. But, even if the payment on account of $1,000 were to be deemed an acceptance, it would not, under the circumstances of this case, be deemed in law an absolute acceptance, for the reason that at that time the durability of the work, the permanency of the coloring of the floors, their hardness and firmness when subjected to ordinary use, could not then be determined. See Bates v. Fish Brothers Wagon Co., 50 App. Div. 38, 63 N. Y. Supp. 649.

The motion to dismiss the complaint, made by defendant at the end of the case, should have been granted, on the ground that plaintiff had failed to prove a substantial performance of its contract, and therefore had failed to prove facts sufficient to constitute a cause of action. The judgment is, therefore, against the weight of evidence.

[3] The court also admitted, over the objection and exception of defendant's counsel, a certificate, signed by the contractor who erected the building, certifying:

"That the floors laid by the Asbestolithic Company at Dr. Kerley's residence, in Sharon, Conn., have been cleaned and left in good shape by Mr. Adams."

No authority was shown in the building contractor, Livingstone, to make admissions on behalf of defendant, nor did the contract between plaintiff and defendant provide for the furnishing of such a certificate by Livingstone, or that such a certificate should have any binding force and effect on defendant. The certificate was, therefore, clearly incompetent. Its admission was prejudical to the defendant, and constituted such error as would necessitate a reversal of the judgment.

For the reasons stated, the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

BIJUR, J., concurs. SEABURY, J., concurs in the result.