Luce *v.* Hoisington.

---

## NAPOLEON LUCE *v.* EDWIN HOISINGTON.

*Trespass. Attachment. Damages. Amendment. Pleading.
Evidence.*

1. The defendant as constable attached the plaintiff's ox, which was exempt; and after the executions were paid the ox was returned. *Held* that the measure of damages was the *use of the ox;* that if the defendant was to the expense of keeping the ox, it was the value of the use less such expense; that a failure to raise crops by reason of being deprived of the use of the ox was not the natural and and proximate result of the attachment; that the plaintiff could not allow his land to go uncultivated and then ask the jury to speculate as to his loss; and that evidence was inadmissible to show it.

2. A part of the property attached was exempt, and a part not exempt, and the question being whether the exempt was turned out for attachment; *Held*, that evidence that the non-exempt property was turned out by its owner for attachment, was not admissible to prove that which was exempt was also turned out; and that the court properly refused to allow the officer to state, whether, in his opinion, the interview between himself and the owner at the time of the attachment was friendly or not.

3. AMENDMENT PLEADING. The plaintiff brought an action of trespass merely declaring for the unlawful taking of his ox; he afterwards filed an amended declaration averring that it was his only team, and that he had been prevented from planting his crops, &c. The defendant then pleaded, and justified the trespasses charged in the amended declaration. *Held*, that the amendment was proper, as it simply amplified the cause already declared for; but if not, that the defendant had precluded himself from raising the question on the trial of issues thus tendered.

4. The defendant claimed on trial that he had settled for the taking when he returned the ox to the plaintiff. But, subsequently to the return, he took a bond of indemnification from the execution creditors. *Held*, that the bond was admissible as evidence to disprove the claim of settlement of the unlawful attachment.

TRESPASS for taking an ox. Plea, the general issue and notice. Trial by jury, December Term, 1883, TAFT., J., presiding. Verdict for the plaintiff. The defendant was a constable, and attached the ox in contention. The facts are sufficiently stated in the opinion, and in 54 Vt. 428, and 55 Vt. 341, where this case is reported.'

*Gilbert A. Davis*, for the defendant.

Loss of crops and use of land is not the natural and proximate result of the trespass complained of. 1 Sedg. Dam. (7th ed.), pp. 144, 149; *Ellis* v. *Cleveland*, 55 Vt. 358.

The plaintiff could only recover nominal damages. 2 Sedg. Dam., pp. 418, 419; *Gray* v. *Stevens*, 28 Vt. 1; *Pratt* v. *Battles*, Ib. 688; *Hurlbert* v. *Green*, 41 Vt. 490; *Luce* v. *Hoisington*, 54 Vt. 428. No damages are allowed for the interruption of one's business by attachment. *Weeks* v. *Prescott*, 53 Vt. 57. So as to loss of custom. *Dennis* v. *Stoughton*, 55 Vt. 371; 73 N. C. 440. The amendment was not allowable. *Carpenter* v. *Gookin*, 2 Vt. 495; *Dewey & Co.* v. *Nichols*, 44 Vt. 24.

*Norman Paul*, for the plaintiff.

The plaintiff is entitled to recover for all damages that he has suffered at the hands of the defendant. 1 Chit. Pl. 396; *Hickok* v. *Buck*, 22 Vt. 149; *White* v. *Moseley*, 8 Pick. 356; *Dickinson* v. *Boyle*, 17 Pick. 78. The offer to show the character of

the interviews between the plaintiff and the defendant was prop-
erly denied. *Oakes* v. *Weston* 45 Vt. 430. The defendant waiv-
ed his right to raise technical questions by pleading, and justify-
ing the trespasses. *Hathaway* v. *Rice*, 19 Vt. 102.

The opinion of the court was delivered by .

Ross, J.    The exception to the allowance of damages for the
loss of, or failure to raise crops by reason of being deprived of
the use of the ox in cultivating the land, is sustained. Such
damages were not the natural and proximate result of the
attachment of the ox. The attachment deprived the plaintiff of
the use of the ox so long as he was held under the attachment.
What the use of the ox was worth during the time he was
held under the attachment was the proper measure of the dam-
ages for such detention. If the plaintiff, to release the ox,
paid for his keeping while attached, the use of the ox
during that period was to be valued without reference to
the expense of keeping him. If the defendant was at the
expense of keeping the ox during such period, his use should
be valued at such a sum as it was worth above the expense of
his keeping. With the sum that was a fair equivalent for the
use of the ox, the plaintiff could have procured the services of
another team in cultivating the land, so that it would be as pro-
ductive and beneficial as it would have been if he had had the
use of the ox for that purpose. The failure properly to put in
his crops, and cultivate his land, was not a natural or proximate
result of the attachment. It was the duty of the plaintiff to have
supplied himself with the services of another team for carrying
on his land. He could not allow his land to go uncultivated,
and ask the jury to speculate as to what his crops would or
might have been, if he had had the use of the ox. The income
from the land depended much upon after-cultivation, as well as
upon the seed, the season, the harvesting, and many contingen-
cies, as well as the proper cultivation of the land in the spring.
It furnished no just and exact measure of the loss occasioned by
the attachment of the ox. But fair compensation for the loss of

the services of the ox, was the legitimate and proper measure of the plaintiff's right of recovery for the detention of the ox under the attachment.    It was, therefore, error for the County Court to admit evidence to show the loss of crops, and of use of the land, through the plaintiff's failure to cultivate his land that spring; and to allow the jury to consider such evidence in determining the damages which the plaintiff was entitled to recover.    Whether the question allowed to be put to the witnesses on this subject was error, it is immaterial to determine.    The allowance of this question, without previous testimony from the witnesses showing their acquaintance with the land, the season, and various elements which must necessarily enter into an estimate, would be error.    It is not shown by the exceptions whether the witnesses were thus qualified to form an estimate of the damages.    What the plaintiff's loss was in this respect must of necessity be a matter of judgment or estimate, on which properly qualified witnesses might be allowed to give an opinion.    But, as it was error to admit evidence at all on this subject, the particular form of the question, or the order of the testimony, can give no aid in a new trial of the case and need not be further considered.

II.    There was no error in the refusal to admit what was said about turning out the other property attached, nor whether that interview between the parties was friendly or otherwise.    The other property was not exempt from attachment.    The plaintiff might be willing to turn that out, but his willingness to do so would furnish the jury no legitimate aid in determining whether he turned out the ox which was exempt from attachment.    Nor would the character of this interview between the parties aid in this respect.

III.    By pleading to, and justifying the separate trespasses charged in the two counts of the amended declaration, the defendant precluded himself from raising the question on the trial of of the issues thus tendered by him, of the right of the plaintiff to file the second amended count.    Hence he was not entitled to a compliance with his first and second requests.    But the County Court told the jury that on the evidence no recovery could be

had for the alleged trespass set forth in the second count. This would have cured any error in refusing to comply with the first and second requests if otherwise the plaintiff was entitled to have the requested instruction given to the jury. The plaintiff was entitled to amend his original count, so as to set forth the special damages occasioned him by the trespass therein declared for. Such amendment did not set forth a new cause of action, but simply amplified the cause already declared for.

IV. The indemnifying bond, taken by the defendant from the judgment creditor at the time he paid to him the money received upon the release of the ox from attachment, was properly received in evidence. The bond indemnified the defendant from the attachment of the ox. If the defendant had settled with the plaintiff for the wrongful taking of the ox, when the plaintiff paid him the money to obtain the release of the ox, it was not natural that he should have required a bond of indemnity against the very claim he had just settled, before he would pay the money so received to the judgment creditor. *Prima facie* demanding and taking such a bond under the circumstances was inconsistent with the defendant's claim that he settled for the wrongful attachment of the ox. It was conduct apparently inconsistent with the defendant's claim in regard to the settlement. It was open to explanation. Without explanation it tended to support the plaintiff's contention that he did not settle his claim for the wrongful taking of the ox.

This disposes of all the exceptions relied upon in this court.

Judgment reversed, and cause remanded for a new trial.