(34 Misc. Rep. 127.)

BRAUER v. OCEANIC STEAM NAVIGATION CO., Limited.

(Supreme Court, Trial Term, New York County. February, 1901.)

1. BREACH OF CONTRACT—DAMAGES.

In an action for breach of contract, damages not arising naturally, but from circumstances peculiar to the special case, are not recoverable, unless the circumstances were known to the person who broke the contract.

2. SAME—CONJECTURAL PROFITS.

Where a cattle shipper sued for breach of contract to lease him cattle space on defendant's line of ocean steamers for one year, damages for loss of profits based on an arrangement that, if he could procure two lines of steamers, one running to Liverpool and the other to London, certain parties would take his contract off his hands, and would pay him a commission for buying and selling the cattle, are too remote and conjectural to be recovered.

3. SAME—REDUCING DAMAGES.

A party to a contract, in order to recover for breach thereof, must so act as to make his damages as small as possible.

Action by William W. Brauer against the Oceanic Steam Navigation Company, Limited, to recover for failure of defendant to carry out a written contract entered into in October, 1897, by which defendant agreed to give plaintiff certain cattle space in its steamships for the purpose of carrying or transporting cattle from the city of New York to the city of Liverpool, England, from the 1st day of December, 1897, until the 30th day of November, 1898, in consideration of the plaintiff's agreeing to ship all the cattle required to fill said space, and paying to the defendant therefor the sum of 40 shillings and 6 pence per head, and in further consideration of plaintiff's giving satisfactory guaranty on or before November 15, 1897. Verdict for plaintiff. Motion for a new trial. Granted.

See 49 N. Y. Supp. 937.

Warren, Boothby & Warren, for plaintiff.

Wheeler & Cortis (Everett P. Wheeler, of counsel), for defendant.

MacLEAN, J. This action was brought to recover damages for the failure of the defendant to carry out "a contract in writing" alleged to have been made in the month of October, 1897, by which the

69 N.Y.S.—30

defendant "agreed to let this plaintiff the cattle space" in certain vessels of its line of steamships "for the purpose of carrying or transporting cattle from the city of New York to the city of Liverpool, in England, from the 1st day of December, 1897, until the 30th day of November, 1898, in consideration of the plaintiff's agreeing to ship all the cattle required to fill said space, and paying to the defendant therefor the sum of forty shillings and six pence per head, and in further consideration of plaintiff's giving satisfactory guaranty on or before November 15, 1897." The writings relied upon to establish the contract, apparently not to be performed within one year, consisted of the following telegrams:

"New York, October 25, 1897.

"W. W. Brauer, Auditorium Annex, Chicago: Am ready to close all White Star steamers carrying cattle December 1, 1897, to November 30, 1898, inclusive, 42—6 insured. Maximum numbers our call, subject your giving satisfactory guarantee Liverpool by November 15; but decline positively pay brokerage. Subject to reply by noon to-morrow, Tuesday.

"H. Maitland Kersey."

"Dated Chicago, Ill., October 26.

"To H. Maitland Kersey, White Star Line, Broadway: Accept your proposition. Confirm, closing your boats for one year.          Brauer."

"Dated New York, October 26.

"To W. W. Brauer, Aud. Annex: Message received. Consider space closed.
"H. Maitland Kersey."

The plaintiff further alleges that he "had an agreement by which he was to receive a commission of fifty cents per head for buying said cattle and five shillings sterling per head for selling them after they were taken to England," but his testimony hardly supports his allegation. The cause having been submitted to the jury, a verdict was found for the plaintiff.

Were not, however, the damages awarded for losses of profits too remote, and could they be assessed save by calculation upon conjecture? Expression of a common intention, which is agreement, supposedly is arrived at in view of circumstances known to both parties, either because commonly known from the great generality of cases, or because the peculiar circumstances, if any, specially affecting one party, have been communicated to the other, thus enabling the latter to protect himself against consequences not ordinarily to be anticipated, or to avoid them by abstaining from the agreement altogether. This,—the doctrine of the civil law, adopted into the Code Civil (sections 1150, 1151) as "exceptions to and modifications of" a preceding section (section 1149) stating a rule to the same effect as the principle of the common law,—upon its statement in Sedgwick on Damages, under the reserve "it is sometimes said," was presented to the court upon the return of a rule nisi in Hadley v. Baxendale, 9 Exch. 341, during the argument upon which reference was had to Mr. Sedgwick's treatise by counsel showing cause and by counsel opposed, and also by members of the court, particularly Parke, B., who remarked, "The sensible rule appears to be that which has been laid down in France, and which is declared in their Code," continuing with Mr. Sedgwick's translation of the sections noted above. The same doc-

trine was announced in the judgment, which, in part, has been paraphrased: "Damages not arising naturally, but from circumstances peculiar to the special case, are not recoverable unless the special circumstances were known to the person who has broken the contract." The rule in Hadley v. Baxendale, although received as novel, was not new in this state, wherein it was earlier observed that the courts were "more and more falling into the track of the civil law." Cowen, J., in Blanchard v. Ely, 21 Wend. 347. Its authority was expressly acknowledged in Booth v. Rolling-Mill Co., 60 N. Y. 487, 492. It was recognized before repeatedly. Hamilton v. McPherson, 28 N. Y. 72; Passinger v. Thorburn, 34 N. Y. 634; Leonard v. Telegraph Co., 41 N. Y. 544. It has been followed since, again and again. Allen v. McConihe, 124 N. Y. 342, 26 N. E. 812; Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N. Y. 209, 31 N. E. 1018; Todd v. Gamble, 148 N. Y. 382, 42 N. E. 982. The application of the rule to the facts in evidence herein was not alluded to upon the motions to dismiss the complaint and to direct a verdict, both of which were pressed upon other grounds, but it may be considered upon the present motion under the exception taken to the refusal to charge the jury in the terms of the defendant's tenth request. The special circumstances relied upon in this cause were not, so far as appears, an existing contract or agreement between the plaintiff and some third persons, but, to use his own words, "the arrangement was that, if I could procure two lines of steamers, the parties would take my contract, and pay me a commission for buying and selling, but they did not want one line without the other, as one went to Liverpool and the other to London. The idea was to supply the market tributary to both Liverpool and London, in order to have better command of the markets thereabouts,"—at best, a tentative arrangement, one which might or might not ripen into an agreement, and seemingly too speculative to be made the basis for special damages, because it would import an uncertain element of liability, not within the contemplation of the parties, even if the defendant knew (as does not appear from the evidence) that third parties would subsequently take the contract of the plaintiff, and pay him a commission for buying and selling. "In such a case the intent and character of the obligation he assumed should be known to the carrier, which, in this case, was impossible, as the contracts were not then made." Harvey v. Railroad Co., 124 Mass. 421, 424. Even if the defendant was informed that the interest of the plaintiff "was purely to receive commissions," it was not informed that his agreement, actual or prospective, with third parties, was to provide him commissions in excess of those usual and to be anticipated in such transactions; and therefore such consequences of a breach of the contract, upon which arises this action, were not brought into the contemplation of the defendant. It is true that in the Booth Case, supra, it was held that, "as there was no market price for the article, the fact that the defendant was not informed of the precise price in the subcontract does not affect its liability." In the situation presented herein, however, there was a market price apparently, and no subcontract is shown. "There is another pertinent rule of damages,—that the party who suffers from a breach of contract

must so act as to make his damages as small as he reasonably can. He must not, by inattention, want of care, or inexcusable negligence, permit his damages to grow, and then charge it all to the other party. The law gives him all the redress he should have by indemnifying him for the damage which he necessarily sustains." Parsons v. Sutton, 66 N. Y. 92, 95; Allen v. McConihe, 124 N. Y. 342, 347, 26 N. E. 812. There is no evidence in this case that the plaintiff informed the defendant that his proposed agreement for commissions was dependent solely upon his securing defendant's fleet of ships for cattle transportation, while, saving an unsupported allegation in the complaint, it seems to be undisputed that the plaintiff could have secured other means of transportation upon no unfavorable terms. He chose to remain inactive, and to permit his damages to grow, and would now charge his entire loss, if loss there was, to the defendant, whom he failed to acquaint with the special circumstances, upon knowledge of which, actual or imputable, alone claims for such loss could be founded. The motion for a new trial is granted. An order may be submitted to be settled upon notice.

Motion granted.