HERRING v. ARMWOOD.

(Filed April 15, 1902.)

DAMAGES—*Breach of Contract—Landlord and Tenant—Remote-
ness.*

Damages resulting from failure of landlord to furnish fertilizers
to his tenant are not too remote for consideration.

ACTION by B. W. Herring against W. H. Armwood, heard
by Judge *O. H. Allen* and a jury, at December Term, 1901,
of the Superior Court of DUPLIN County.   From a judgment
for the plaintiff, the defendant appealed.

This is an action to recover under claim and delivery pro-
ceedings the possession of two bales of cotton, alleged by
plaintiff to be his property, and to be worth $81, wrongfully
withheld by defendant.   Defendant denies plaintiff's owner-
ship and that his withholding possession is unlawful, and al-
leges that the cotton is worth greatly more than $81.   And
for a second defense and counter-claim alleges that he rented
the farm upon which the cotton was raised from plaintiff in
August, 1898, under the following written contract:   "I,
B. W. Herring, do hereby agree to rent my farm to Henry

Armwood for the year of 1899, for five bales of cotton of the first picking, weighing five hundred pounds, or the equivalent in money.    I do also agree to dig marl to the amount of two thousand bushels, more or less, and Henry Armwood agrees to haul the same and scatter on the land."    And that it was understood and agreed that defendant was to use the marl, which was a valuable fertilizer, upon the crops in lieu of commercial fertilizers, and for the purpose of increasing the yield of the crops of cotton, corn and other crops, and materially benefit the land, and that it would have increased the yield; that plaintiff failed and refused to dig the marl, and wholly failed to perform his part of the contract in this respect; that he was ready, able and willing to perform his part of the contract at all times; that by reason of plaintiff's breach of contract he lost greatly in the decrease of the yield of his crops, and time and labor spent upon said land in cultivating said crops to his damage $150.    Plaintiff admitted the written contract, but denied the other allegations set up in the second defense and counterclaim.

Upon the trial his Honor submitted the following issues:

1. Is the plaintiff the owner and entitled to the possession of the two bales of cotton claimed by plaintiff?

2. Was the property in the possession of the defendant at the time of the seizure?

And he refused to submit the following issues tendered by defendant:

1. Was it agreed between the plaintiff and the defendant that the plaintiff should dig and furnish two thousand bushels of marl, more or less, and the defendant should haul the same on the land rented to be used under the crops of 1899?

2. Did the plaintiff fail and refuse to perform his part of the contract?

3. Was the defendant able, ready and willing to perform his part of the contract?

4. What damage has defendant sustained?

To which defendant excepted.

B. W. Herring, the plaintiff, then testified that the defendant was to pay five bales of cotton as rent for the land, and that he had paid only three bales. The two bales in controversy were raised on the land rented from him by the defendant and were carried by the defendant to Ruffin Cameron's gin to be ginned. The two bales were seized at Cameron's gin, in this action. The defendant was present when the cotton was seized, and forbade Cameron to deliver it to me, and I forbade Cameron to deliver it to him. I did not agree to dig any marl for the crop of 1899. I wanted the marl dug and used, because I wanted to experiment. It takes twelve months for marl to do much good. The defendant did not use guano. He was to cultivate about forty acres of land. The marl was on sixteen acres of the land he rented in the year 1898. The land on which the marl was, was new ground cleared recently, and it only had three crops on it; and plaintiff rested.

Defendant offered the following evidence, which was objected to by the plaintiff; excluded; defendant excepts:

W. H. Armwood, the defendant, testified: "It was agreed that the two thousand bushels of marl should be hauled on the crop for 1899. I lived on the plaintiff's land in 1898, and hauled marl on 15 or 16 acres. The crops were increased by the use of the marl 50 to 75 per cent. I hauled the marl from Mr. Dan. Lee Flowers'. He had the bed and furnished Mr. Faison Hicks, Mr. Ab. Herring, Andrew Barfield, and others in the neighborhood. My crop was decreased by a failure to use the marl at least 50 per cent. I demanded of the plaintiff to dig the marl, and it was agreed he would dig it in September, 1898, so that I could use it on the crop for 1899."

All evidence of this witness in reference to the marl and its increase upon the crops was objected to by the plaintiff, upon the ground that it was too remote. Objection sustained. Defendant excepted.

Dan. Lee Flowers testified: "I bargained to sell to the plaintiff two thousand bushels of marl, to be used by the defendant, and the same was to be dug in 1898. I have used marl from my bed for a number of years, and it always increases the production of my crops from 50 to 100 per cent; in other words, I make twice as much the year I use marl upon the same land as I do without it."

Verdict and judgment for plaintiff. Defendant excepted and assigned the following as error: 1. For that the Court failed to submit an issue as to the value of the property. 2. For that the Court erred in refusing to submit the issues tendered by the defendant. 3. For that the Court erred in excluding the evidence of defendant, Armwood, and Flowers, tending to show the decreased yield of the crop by reason of the failure of the plaintiff to furnish the marl to be used thereon. Defendant appealed from judgment for the plaintiff.

*Allen & Dortch,* for the plaintiff.
*Stevens, Beasly & Weeks,* for the defendant.

COOK, J., after stating the case. The sole question involved in this appeal, when stripped of its technical paraphernalia, is whether an action for damages will lie for a breach of contract in failing to furnish fertilizers, whereby the yield of the crop was decreased, because such damage or failure in the yield would be too remote?

His Honor held in the negative, which, we think, was error. The rule, as stated in *Hadley v. Baxendale,* 9 Exch. Rep., on page 353, is as follows:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive, in respect of such breach of contract, should be such as may fairly and reasonably be considered either arising

naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

This rule is substantially repeated, but more succinctly, by Pearson, J., in *Ashe v. DeRosset,* 50 N. C., on page 301, 72 Am. Dec., 552, which is quoted *verbatim* in *Spencer v. Hamilton,* 113 N. C., on page 50, 37 Am. St. Rep., 611.

Recognizing the fact that the yield of crops is increased by the use of fertilizers, and applying this rule to the case at bar, the conclusion is irresistible that a lessening in the yield would be the natural result of a failure to use the marl, if marl be beneficial to the growth and development of the crops, and that the lessened yield would be incidental to such breach, and, therefore, plaintiff would be liable.

It is common knowledge that the use of manure, manipulated fertilizers and compost increase the yield of cotton, corn, peanuts, etc., and in some sections are considered absolutely necessary for the production of a profitable yield. It is likewise well known that the use of marl in some sections of the State greatly increases the production. And it appears from the contract set up by defendant and admitted by plaintiff, that he, the plaintiff, in renting the farm, agreed to dig two thousand bushels of marl to be hauled and scattered upon the land; and by his failure to do so, it is alleged that the yield was greatly lessened. And it seems to have been within the contemplation of both parties that the use of the marl would be beneficial in raising the crops; and, if so, then the failure to use it would necessarily lessen the yield, which would be the direct result of the breach of contract in not furnishing it. How much that net additional yield, if any, would have been according to the usual and natural course of things, was a question of fact to be found by the jury; and by the "net addi-

HERRING *v.* ARMWOOD.

tional yield" we mean its value after deducting its necessary expenses in harvesting, etc., as is held in *Spencer v. Hamilton, supra.* In the case last cited our Court held that the tenant could plead, as a counter-claim for damages, a breach of contract upon the part of the landlord in not draining the land as he had agreed to do, thereby decreasing the yield, in an action brought to recover the rent. So, it must necessarily follow that if damages be recoverable for a breach of contract which decreased the yield, they can also be recovered for a breach of contract whereby the yield was not increased. It requires the same time, labor and expense in preparing the land, and in plowing and hoeing crops upon thin and unimproved land as it does upon well-improved, manured and fertilized land; and we know that the products of the former are less than those of the latter, according to the usual and natural order of events.

The defendant had a right to have the issues tendered by him submitted to the jury; and if he could sustain them by proper proof, he would be entitled to recover such amount of damages as he might show had been done him by reason of the breach of the contract. For the error above pointed out a new trial will be awarded.

New Trial.