[No. 10288.  Department Two.  November 15, 1912.]

## A. W. KOPCZYNSKI, *Appellant*, v. BOLCOM-VANDERHOOF LOGGING COMPANY, *Respondent*.[1]

CONTRACTS—EVIDENCE—SUFFICIENCY.  The evidence fails to establish a contract for slops for five months at ten dollars a month, where it appears that the defendant's foreman refused plaintiff a contract for longer than one month, directing him to the office of the company, where he paid $50 for five months on representing that the foreman had contracted with him therefor.

CONTRACTS—BREACH—MEASURE OF DAMAGES.  In an action for breach of contract to furnish slops for hog feed, the plaintiff cannot recover for expenses incurred before entering into the contract in reliance upon obtaining the contract; as they could not have been within the contemplation of the parties.

SAME—MEASURE OF DAMAGES—PROFITS—EVIDENCE.  In such a case, loss of profits cannot be recovered on the mere statement of what the hogs cost, what they sold for, and what might have been obtained if the contract had not been breached, where it appears that the plaintiff could have obtained feed elsewhere the cost of which was not shown, and there was no showing of the cost or profit from feed obtained under the contract.

Appeal from a judgment of the superior court for King county, Main, J., entered March 9, 1912, dismissing an action on contract, upon sustaining a challenge to the sufficiency of the evidence.  Affirmed.

*George B. Cole*, for appellant.

*Walter S. Fulton*, for respondent.

MORRIS, J.—Appellant brought this action to recover damages for the alleged breach of a contract with respondent for furnishing slops and refuse from the cookhouse at its logging camp, for appellant's use in feeding hogs.  At the close of the evidence, the court below sustained a challenge to its sufficiency, and plaintiff appeals.

In order to recover, it was essential that appellant should establish the contract and its breach, and then bring his

[1]Reported in 127 Pac. 601.

proof within the proper measure of damages. The evidence relied upon to establish the contract is that the foreman of the respondent's logging camp at Acme, in consideration of $10, gave appellant the right to take these slops for one month. This right was granted a second and third month on the same terms. Appellant then wanted to contract with the foreman for a longer period, but the foreman refused upon the ground of lack of authority, and directed him to go to the main office of the company at Seattle. He went to Seattle, saw Mr. Bolcom, and told him what the foreman said, and that Mr. Bolcom extended the privilege for five months and accepted $50 as payment therefor. Respondent's version is, that the foreman of the camp granted appellant the privilege of taking the slops, on payment of $10 a month; that appellant wanted to purchase the right for some definite time, but that the foreman refused to so consider the matter, and told him: "I can't guarantee the slops to you at all only a month at a time. If you want to pay $10 for a month's slops, you can pay it;" that appellant then went to Seattle and told Mr. Bolcom he had a contract for the slops at $10 a month, and wanted to pay the money to him. Mr. Bolcom asked him why he did not pay the money at the camp; he replied that he was on his way to Chicago, leaving his wife in charge, and that he did not want her to be bothered with the payments. Mr. Bolcom then told him if he wanted to pay the money there, he could do so, and he would give him a receipt. Appellant then handed Mr. Bolcom $50, and obtained a receipt "for $50 for slops for five months in advance."

That the respondent's version is the true one is, we think, evidenced by the fact that, on appellant's returning to Acme and telling the foreman what he had done at Seattle, the foreman became very angry, and refused appellant any more slops, and then, to use appellant's language, "the foreman licked me." If appellant had gone to Seattle to obtain the right to these slops for a definite time at the suggestion of

the foreman, we do not understand the reason for the fore-
man's anger to the extent of beating him for doing just
what he had told him to do.  Rather does this circumstance
prove to us that the truth is the foreman refused appellant
a contract, and appellant then sought to obtain one from
the company, and succeeded in getting an acceptance of his
$50, upon the statement that he already had a contract and
only wished to pay the money in at the main office in order
to save his wife inconvenience while he was absent at Chica-
go.  This convinces us that appellant never had a contract.
The great essential of a contract—that the minds of  the
parties must meet—is lacking.

However, assuming, as this was a question of fact, that
the evidence upon the question of contract was sufficient to
go to the jury, the next question the breach being admitted,
is, Was there sufficient proof of damages?  It was upon this
point the court below, while doubting the existence of the
contract, made the ruling complained of.  The evidence re-
lied upon by appellant to prove his damage was, that he had
purchased a horse, wagon and harness which he was com-
pelled to sell at a loss; that he had leased land and built hog
pens which were a total loss; and his estimated profits.  This
expense was all incurred before his visit to Seattle, from which
time his contract must date, if at all.  He admits the fore-
man refused to give him a contract and sent him to Seattle
to obtain it, and then he says the next day after his return
from Seattle the foreman refused him slops.  In other words,
the contract was broken as soon as made, so that none of
these expenses were incurred in reliance upon his contract,
or to enable him to fulfill it, because he did not know until
he interviewed Mr. Bolcom that he could obtain a contract.
Anything he may have done prior to that date cannot be
said to have been within the contemplation of the parties at
the making of the contract.  He was in exactly the same
situation the day his contract was broken as on the day it
was made.  The contract had caused no change whatsoever

in these respects, so that the only damage that could be charged against the contract was the loss of these slops as feed for his hogs.

That in a proper case profits may be recovered upon the breach of a contract, when they are susceptible of proof, will not be doubted. Appellant, however, gave no testimony bringing him within this rule. He contented himself with showing that he purchased his hogs for $575 and sold them for $420, and that, had he been continued in his right to the slops, he could have made $1,500, based upon his profit the second and third months, when he was getting the slops, not under the contract but under his arrangement with the foreman. There is absolutely no proof that he could not obtain proper feed elsewhere. In fact, it is shown he could have obtained feed for the hogs at Acme. His reason for not doing so was that "it costs too much money." How much it would have cost, and whether he could have fed the hogs at a profit with the feed obtainable at Acme, is not attempted to be shown, other than his statement that he could not make a profit because "it costs too much money." This, we take it, is not sufficient; and, in order to recover, he must offer something other than his conclusion. He must show the cost of feeding his hogs with the slops until they were ready for market, other expense that might have entered into the cost until the hogs were ready for the market, and then what he could have obtained for them when they were so ready. From this proof it would be a simple matter to estimate his profits, if any. If we should assume that his estimate of the profits would be sufficient, he failed to show the cost of obtaining feed at Acme, or what it would have cost him to get his hogs into marketable condition with the feed obtainable at Acme. Until there was some proof of these facts, it would be a mere guess to attempt to estimate the cost of feeding, the supplies obtainable at Acme, and the gain or loss as compared with feeding the slops. Profits when recoverable cannot be guessed at. There must be some tangible proof upon which they can

be estimated with some degree of certainty. There was none in this case, and for this reason the case must fail.

Appellant relies upon *New Market Co. v. Embry*, 20 Ky. Law 1130, 48 S. W. 980. In that case the parties made a contract under which plaintiff was to take slops from a distillery, beginning November 1, and ending May 31 following. In reliance upon this contract, plaintiff purchased 638 cattle and placed them in pens at the distillery to consume the slop; the contemplation of the parties being that the cattle would be thus fattened and ready for the market on May 31. When the cattle had been fed on the slop so long that they could not be profitably fattened on anything else, the defendant, on January 15, shut down the distillery, when it was not practicable to get other slops to feed, and plaintiff was compelled to sell his cattle at a loss. It was held that a recovery could be had of the reasonable profits plaintiff could have made had the contract been carried out. The element sustaining a recovery in that case was that the cattle had been fed so long on these slops they could not be fattened at a profit on anything else, and no other slop was obtainable. That element is lacking in this case. On the contrary, it here appears that proper feed could be obtained elsewhere, with no showing of its cost to fatten the hogs, except appellant's conclusion that "it costs too much money." We think he should have gone farther than this and, having failed to do so, the court was justified in taking the case from the jury because of a failure of proof.

Appellant also cites *Lillard v. Kentucky Distilleries & Warehouse Co.*, 134 Fed. 168, another slop-feeding case. It will be noted that the court, in its opinion on page 178 says: "If the plaintiff had furnished no slop or had furnished only a part of that it contracted to supply, the loss resulting from any outlay for other food or for labor necessitated, or any other expense" would be recoverable. The plaintiff here failed to show "the loss resulting from any outlay for

other food," and there was no proof upon which an intelligent verdict upon that point could have been rendered. The respondent endeavored to repay appellant his $50, but he refused to accept it. *For this reason its retention cannot be made an issue here.*

The judgment is affirmed.

MOUNT, C. J., ELLIS, and FULLERTON, JJ., concur.

MAIN, J., took no part.