[No. 15331. Department One. August 15, 1919.]

SVEN NELSON, *Appellant,* v. L. M. DAVENPORT,
*Respondent.*[1]

DAMAGES (15, 74) — GROUNDS — LOSS OF PROFITS. Prospective
profits can be recovered for the breach of a contract to furnish
garbage from defendant's hotel for the fattening of hogs, when
proved with reasonable certainty.

SAME (118)—SALES (153) — LOSS OF PROFITS — EVIDENCE — SUF-
FICIENCY. The prospective profits from a contract to furnish garbage
from defendant's hotel for the fattening of hogs for a certain period
of time is shown with reasonable certainty by evidence of the
plaintiff's profits for preceding months and that there was a depend-
able market during the term of the contract and that, owing to war
conditions during the balance of the term, plaintiff was unable to
make a profit with any substitute feed obtainable.

DAMAGES (113)—SALES (152)—LOSS OF PROFITS—EVIDENCE—AD-
MISSIBILITY. In an action to recover prospective profits from a con-
tract to furnish hotel garbage for fattening stock or feeder hogs,
qualified witnesses may testify as to the amount of pork-fat a ton
of garbage would produce, that there was a ready market, and feeders
easily obtainable, and as to the time it would take on an average
to fatten a hog and the expense attached thereto, and the amount
of garbage and weight per day taken from defendant's place of busi-
ness prior to breach of the contract.

[1]Reported in 183 Pac. 132.

EVIDENCE (76)—BEST EVIDENCE—LOSS OF WRITING. After proof that written statements of the weight of loads of garbage were lost and could not be produced, parol evidence with reference to the regularity of the weight of the daily loads, and their weight on a number of occasions, is admissible upon an issue as to the daily amount of garbage furnished.

PLEADING (22)—CONCLUSIVENESS OF ALLEGATIONS ON PARTY PLEADING. In an action to recover prospective profits from a contract to furnish hotel garbage for fattening hogs, the defendant cannot claim that the consequences were not within the contemplation of the parties, where his answer admits facts showing notice of the purpose for which the garbage was to be used.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered February 8, 1919, upon granting a nonsuit, dismissing an action on contract. Reversed.

*Plummer & Lavin,* for appellant.

*Wakefield & Witherspoon,* for respondent.

MITCHELL, J.—Appellant sued to recover damages for the alleged breach of a contract with respondent for furnishing garbage and refuse from respondent's hotel and restaurant, in Spokane, for appellant's use in feeding hogs. At the close of appellant's evidence, the trial court sustained a challenge to its sufficiency and entered judgment accordingly, from which this appeal has been taken.

The purpose of the action was to recover prospective profits, of which appellant was deprived by respondent's breach of the contract. In order to recover, it is essential to establish the contract and its breach, and then furnish proof within the proper measure of damages. In this case it was admitted there was a written contract between the parties for a period of two years from March 15, 1916, and, if not expressly admitted, there is evidence to show respondent breached the contract on October 10, 1917.

The real controversy is over the measure of damages, sufficiency of the proof to take the case to the jury, and offers of testimony refused by the trial court. "This court is committed to the doctrine of allowing prospective profits." *Bogart v. Pitchless Lumber Co.*, 72 Wash. 417, 130 Pac. 490; *Kopczynski v. Bolcom-Vanderhoof Logging Co.*, 71 Wash. 93, 127 Pac. 601.

There was substantial evidence to show appellant had been in the business of raising or fattening hogs for sale for ten years and, at the time he made this contract, had about one hundred and twenty hogs; that, during the nineteen months the contract was observed, appellant made a net profit of twelve thousand dollars, most of it in the last six months, by the exclusive use of this hog food; that fruitless efforts were made by appellant, upon the breach of the contract, to get the same kind of material elsewhere; that the garbage and refuse from the "Davenport" was the best of that kind of hog food found in the vicinity; that, on account of war conditions, neither grain nor shorts could be had on the market for feeding hogs, and appellant was compelled to use grain already on hand and a small supply of shorts purchased at a distance to take care of the one hundred and twenty-five hogs on hand at the time of the breach of the contract, at such prices and quality of the food compared with that covered by the contract as to deprive him of any profit, and that he was forced out of business; that there was a regular market at which "stock hogs" or "feeders" for fattening could be purchased at prices two cents per pound less than the market price of fattened hogs; that the "feeders" when purchased averaged from one hundred and twenty-five to one hundred and fifty pounds each, and, after a few weeks feeding when ready for sale, would average two hundred and fifty pounds each; that there

was a dependable market during the whole of the remaining five months and five days of the contract for the sale of hogs at sixteen to seventeen cents per pound; that the garbage and refuse from respondent's place of business (which continued to be run by him) during the balance of the term of the contract would have fattened five hundred hogs; that appellant's operating expenses, including the contract price for the garbage and refuse for the remaining five months and five days of the contract, would have been eight hundred and fifteen dollars; that appellant was at all times ready, willing and able to take and pay for the material as provided by the contract; and that, because of the precautions observed and arrangements made, based on experience and information in the business for the last few years, there was no reason for apprehension of disease among the hogs while they were being prepared for market. In much of the testimony appellant was corroborated by well qualified witnesses, some of whom were, and for years had been, engaged in the same kind of business on a large scale in that vicinity, and who testified to market conditions and prices during the five months that appellant was deprived of the fruits of his contract, and also that the material involved in the contract was of the highest quality for the purpose intended.

A litigant is not to be turned out of court because he does not keep a set of books, nor a hog fattener if he fails to record the exact purchase and sale weight of each of his hogs. The theory upon which prospective profits are allowed is that they can be estimated with reasonable certainty. As we said in the *Bogart* case, *supra*, "Such profits do not have to be accurately known. They are to be determined from a consideration of all of the tangible evidence upon the subject."

Then, after citing and quoting from other cases in this court on the subject, we further said:

"To ascertain the cost of performing any contract so as to arrive at the measure laid down in the above cases, resort must of necessity be had to the estimates of those who are competent to pass judgment and who have knowledge of the particular conditions."

While that was a case of the breach of a contract by which one was prevented from performing work at a stipulated price, the principle involved is applicable here.

The proof in this case possesses a reasonable certainty of a large and substantial loss of profits, sufficient to have taken the case to the jury.

As the case is to be taken back for trial, it is necessary to pass on offers of proof made by appellant which were refused by the trial court. Appellant offered to prove, by his own testimony and that of others well qualified to speak on the subject, the amount of pork-fat a ton of the garbage and refuse would reasonably produce; that, after being fattened, there was a ready market for hogs, without any expense to appellant, during the remaining five months of the contract, and that, during such time, stock hogs or feeders weighing from one hundred to one hundred and fifty pounds each were easily obtainable without expense other than the regular market price; that, on an average, it would require from two to three weeks to add one hundred and fifty pounds to the weight of each hog, and that the amount of hog food produced by respondent during the five months remaining after the breach of the contract would have fattened five hundred hogs, and the expense attached thereto about five hundred dollars. All such offered testimony was, upon the objection of respondent that it was immaterial and speculative, rejected and refused by the court. It

happened that later some of such testimony at the instance of some witness was admitted. We think all of it proper, being of a tangible sort and calculated to assist the jury in arriving at the amount of a verdict if favorable to appellant.

Also the court erroneously sustained an objection to the question asked appellant in his own behalf as to how long, on an average, during the last six months the contract was in force, it took in feeding the material to make a marketable hog out of a stock hog or feeder. Also the number of cans and average weight per day of the garbage and refuse taken from respondent's place under the contract was proper evidence and should have been admitted.

After a witness who hauled the garbage testified with reference to the regularity of weight of the daily hauls just prior to October 10, 1917, and that on a number of occasions he had them weighed, stating the weight, the court struck the testimony out as not being the best evidence, upon discovering that a written statement was furnished each time the load was weighed. Thereupon appellant testified the statements had been lost before trial and that he was unable to produce them; after which the court still refused the testimony as to weights. The ruling was erroneous.

Respondent claims appellant's whole case is at fault for the recovery of prospective profits because there was nothing in the testimony to show, or from which it can be inferred, that the consequences of which appellant complains were within the contemplation of the parties at the time the contract was made. Admit the rule of law to be as counsel contends, his attitude in attempting to apply it to this case overlooks the fact that, in the contract between the parties, which is set out in full in the complaint, there is a provision to the effect that appellant shall· use care to discover and

return any silver, dishes or wares that he may find in the cans; and in his answer there is a positive allegation of a breach of this provision of the contract, in that, from time to time during the life of the contract, appellant left respondent's silverware in the hog pens to be lost and destroyed, retained it for his own use, or gave it away, and that such conduct came to the knowledge of respondent, who, on several occasions, warned appellant in regard thereto. Under such circumstances, respondent is not in a position to contend he was unaware of appellant's business and its dependence upon the material covered by the contract.

HOLCOMB, C. J., MAIN, TOLMAN, and MACKINTOSH, JJ., concur.