[No. 16297.   Department One.   April 8, 1921.]

GEORGE J. CANNON, *Appellant,* v. OREGON MOLINE PLOW COMPANY *et al., Respondents.*[1]

DAMAGES (13, 15) — PROSPECTIVE CONSEQUENCES — CIRCUMSTANCES WITHIN CONTEMPLATION OF PARTIES—LOSS OF PROFITS. A party is entitled to compensation for any injury to him or his property in such an amount as will compensate him for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom and can reasonably be presumed to have been in the contemplation of the parties, but he cannot recover damages for the remote or conjectural consequences of another's acts.

SAME (9)—PROXIMATE CONSEQUENCES. Special damages by way of anticipated profits arising from an act injurious in itself may be recovered if they can be ascertained with reasonable certainty and can reasonably be presumed to have been contemplated by the parties when the transaction occurred, and were the natural and proximate consequences of the transaction, provided the complaining party has done everything in his power to make the damages as little as possible.

SAME (22, 27)—MITIGATION—DUTY TO REDUCE. In an action for damages for the wrongful conversion of a tractor while plaintiff was engaged in plowing his potato land, the loss of profits on a prospective potato crop are not recoverable, where plaintiff did not exercise ordinary diligence to avoid the loss, in whole or in part, by straining his credit to procure another tractor, or by hiring or purchasing horses for the work, both tractors and horses being readily available in a near-by commercial center.

Appeal by plaintiff from a judgment of the superior court for Spokane county, Webster, J., entered August 5, 1920, upon findings in favor of the plaintiff, in an action in tort, tried to the court. Affirmed.

*Edward J. Cannon, Francis J. McKevitt,* and *Orville W. Duell,* for appellant.

*J. D. Campbell* and *Henry L. Kennan,* for respondents.

[1]Reported in 197 Pac. 39.

HOLCOMB, J.—Appellant brought this action against the Oregon Moline Plow Company, and R. C. Holt doing business under the name of the Spokane Farm Machinery Company, to recover damages in the sum of $33,937.

The complaint alleged that appellant purchased a tractor from R. C: Holt, doing business as the Spokane Farm Machinery Company, à dealer in tractors, and that he settled for the same by cash and notes. That the tractor was sold with the knowledge and approval of the Oregon Moline Plow Company, the manufacturer or wholesaler of the tractor; that, being in disrepair, the plow company later wrongfully got possession of the tractor under the pretense of repairing it, and thereupon, because it had not been paid for, converted the same, thereby depriving the appellant of the use thereof during the season in which he must prepare his potato fields for planting; that as the plow company well knew, he could not then get other power in time to do the work and conserve the moisture in the ground; that he later got other power, but the moisture was gone and the seed did not grow and his crop was a total loss, except where planted upon small tracts of ground plowed by the tractor before it was converted, on which parcels of land crops were raised because the moisture was retained; that the plow company had been fully informed of, and knew, what damage would be caused by this wrong; that appellant was engaged in producing high grade pedigreed potatoes for seed for irrigated regions, which brought a very high price.

The findings of the trial court are in nearly all respects favorable to appellant's contention, except that the court exonerated Mr. Holt from participation in the conversion of the tractor, and as to this finding the appellant does not complain.

The trial court found that, had the balance of thirty-nine acres produced a like number of sacks, or hundred pounds, of potatoes as did the small parcels planted at the same time, with the same seed and cultivated in the same manner, per acre, appellant would have made therefrom, above the expense of caring for, harvesting and selling the same a profit of $29,441; but refused to find that the proximate cause of the failure to raise 154½ tons of potatoes of the kind grown by appellant was the wrongful taking of the tractor from him by the plow company, and found that the damages above mentioned are too speculative, and allowed appellant $267, which was the value of his time and outlay in money for hire of horses and effort to secure horses by purchase, and money paid by appellant upon the purchase of the tractor.

Appellant excepted to a part of finding No. 15, made by the trial court, as follows:

". . . and that the loss of the potato crop on the thirty-nine acres as estimated and valued in Finding 12 hereof, was . . . too remote and speculative to be considered in the fixing of the sum of plaintiff's legal damages flowing from such conversion."

He excepted also to the refusal of the court to make the following finding:

"That the proximate cause of the failure to raise 154½ tons of said potatoes was the wrongful taking of the said tractor from the plaintiff by said Oregon Moline Plow Company, as herein recited."

This appeal is prosecuted upon the theory that the damages allowed by the court were inadequate, and that the damages shown by appellant were sufficiently and accurately proven and that he had a right to recover the same as the amount of his actual loss caused by the wrongful conversion of the tractor by the plow company.

Respondent, on the other hand, contends that the proximate cause of the loss of the crop of potatoes was: (a) weather conditions; (b) negligence on the part of appellant to use ordinary endeavors to get another tractor, or horses, and put in his crop promptly; (c) neglect and refusal of appellant to use his credit to procure another tractor; (d) that there were plenty of other tractors on the Spokane market suitable for appellant's work which might have been procured by him if he had been willing. Respondent also contends that the damages claimed by appellant to be the result of the conversion of the tractor were not such damages as were within the contemplation of the parties at the time of the breach, and are too remote and speculative to be considered.

The findings of the court, amply supported by the evidence, establish the fact that the conversion of the tractor was wrongful, and imposed a liability upon the respondent plow company.

We have followed the rule that loss of profit may be recovered in case of a breach of contract where the evidence is such that the profit lost can be ascertained with reasonable certainty. *Shotwell v. Dodge,* 8 Wash. 337, 36 Pac. 254; *Creech v. Humptulips B. & R. I. Co.,* 37 Wash. 172, 79 Pac. 633; *Kopczynski v. Bolcom-Vanderhoof Log. Co.,* 71 Wash. 93, 127 Pac. 601; *Bogart v. Pitchless Lumber Co.,* 72 Wash. 417, 130 Pac. 490; *Nelson v. Davenport,* 108 Wash. 259, 183 Pac. 132.

Appellant contends that, having committed ourselves to that rule, the same rule should be followed where the damage is the result of conversion or other tort; that loss of profits is more frequently allowed to be recovered in cases of tort than in cases of contract. *Leonard v. Beaudry,* 68 Mich. 312, 36 N. W. 88.

Authorities are cited to the effect that loss of profits may be recovered by one who has lost his crops through

the wrong of another, whether it be a tort or breach of contract. *Colorado Canal Co. v. McFarland & Southwell,* 94 S. W. (Tex. C. A.) 400; *Northern Colo. Irr. Co. v. Richards,* 22 Colo. 450, 45 Pac. 423; *Herring v. Armwood,* 130 N. C. 177, 41 S. E. 96, 57 L. R. A. 958; *Kent Brothers v. Halliday,* 23 R. I. 182, 49 Atl. 700; *Pawnee Land & Canal Co. v. Jenkins,* 1 Colo. App. 425, 29 Pac. 381; *Vaughan's Seed Store v. Stringfellow,* 56 Fla. 708, 48 South. 410; *Holt v. United Security Life Ins. & Tr. Co.,* 76 N. J. L. 585, 72 Atl. 301, 21 L. R. A. (N. S.) 691; *Swain v. Schieffelin,* 34 N. Y. 471, 31 N. E. 1025.

It is a general rule, and uniformly followed in this jurisdiction, that a party is entitled to compensation for any injury to him or his property in such an amount as will compensate him for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom, and reasonable to presume to have been in the contemplation of the parties. A person is not liable in damages for the remote consequences of his acts or conjectural consequences. *Wright v. Computing Scale Co.,* 47 Wash. 107, 91 Pac. 571; *Eichbaum v. Caldwell Brothers Co.,* 58 Wash. 163, 108 Pac. 434; *Hausken v. Hodson-Feenaughty Co.,* 109 Wash. 606, 187 Pac. 319.

Special damages by way of anticipated profits arising from an act injurious in itself may be recovered if they can be ascertained with reasonable certainty, and the profits of which the complaining party was deprived causing the alleged damage can reasonably be presumed to have been contemplated by the parties when the transaction occurred, and the damages complained of were the natural and proximate consequence of the transaction which injured the complaining party. *Hoskins v. Scott,* 52 Ore. 271, 96 Pac. 1112.

In the cases cited by appellant, where damages for

losses sustained, as well as future profits that would have been gained from crops lost or shortened for failure to furnish water for irrigation of land as contracted, the results to users of water for farming purposes are certainly so disastrous and irremediable that the courts hold that a party controlling the supply of water, and contracting to supply definite and sufficient quantities to users, should not be exonerated from a failure to perform except under circumstances clearly showing that the failure was chargeable to *vis major*, and not to negligence or wilfullness. *Pawnee Land & Canal Co. v. Jenkins,* 1 Colo. App. 425, 29 Pac. 381.

In the cases cited for damages for failure to furnish the kind or quality of seed bought for farming purposes, seed was probably essential for the crops, and when the seed failed, the crop failed. This result would be conclusively presumed to be within the knowledge and contemplation of the vendor. *Vaughan's Seed Store v. Stringfellow,* 56 Fla. 708, 48 South. 410.

Similar manifest conditions and presumable consequences governed other cases cited by appellant.

The damages demanded in this case do not come under the head of the ordinary, usual or commonly to be expected consequences of such tort. They must, then, be brought within the head of unusual and peculiar consequences of the wrongdoer's act, if, under the circumstances, it can be fairly said that both parties have these consequences in contemplation at the time of the wrong complained of, as the probable result thereof, and if these unusual consequences are neither uncertain, unnatural nor remote as to cause, nor speculative and conjectural in effect.

There is another principle which applies also respecting the recovery of such special damages, and that is, that the complaining party must have done everything in his power to make the damages as little as possible.

*Brauer v. Oceanic Steam Nav. Co.,* 34 Misc. 127, 69
N. Y. Supp. 465; *Sledge v. Reid,* 73 N. C. 440; *Luce v.
Hoisington,* 56 Vt. 436; *Florence Fish Co. v. Everett
Packing Co.,* 111 Wash. 1, 188 Pac. 792; *Hausken v.
Hodson-Feenaughty Co., supra; Warren v. Stoddart,*
105 U. S. 224.

It is true the trial court found, among other things,
that appellant used ordinary diligence to procure teams
either by hire or purchase after the tractor was con-
verted by the plow company. With that particular
finding we are not in accord. The record contains un-
disputed evidence that there were many horses adver-
tised for sale by numerous sellers between May 27,
when the tractor was taken from appellant and prior
thereto, and June 5, when it was found the plowing
should have been done in order to secure the best re-
sults; that advertisements were running in the daily
papers in Spokane during that time continuously, and
that horses were so plentiful they were a drug on the
market in Spokane. Appellant waited for some time
before he attempted to search for horses such as suited
him, and then went down some distance in the country
from Spokane and was gone eight days searching for
and procuring three horses that he needed. If the
plowing of the ground for potatoes was so extremely
urgent that it need be done at that particular time, be-
tween May 27 and June 5, in order to conserve the
moisture then in the ground, undoubtedly appellant
could have hired horses, or hired men and teams to do
the plowing for him, in order to get it done in time.
This particular tractor was not exclusively necessary
for such work. He, however, saw fit to wait and let
the moisture go out of the ground, as he says it did
about June 5.

"... where a party entitled to the benefit of a
contract can save himself from loss arising from breach

of it at a trifling expense, or with reasonable exertion, it is his duty to do it, and he can charge the delinquent with such damage only as with reasonable endeavors and expense he could not prevent." *Warren v. Stoddart,* 105 U. S. 224; *Florence Fish Co. v. Everett Packing Co., supra.*

The rule is very well stated as to this question by the supreme court of North Carolina in *Sledge v. Reid, supra,* where the court said:

"Consequential damages, to be recoverable, in an action of tort, must be the proximate consequences of the act complained of, and not the secondary result thereof.

. . . .

"The proximate damage to the plaintiff from the tort of the defendant, was the loss of the mule; a shortening of the crop was the secondary consequence resulting from the first damage. He is allowed to recover for the first, but not for the second, because it is too remote and uncertain. The loss of the crop, though following the loss of the mule, was neither a necessary or natural consequence. The plaintiff might buy or hire another and finish his crop; and because he preferred to throw out a part of the crop, he is not thereby enabled to claim damage for the loss as an immediate and necessary consequence of the tort.

"Suppose the court should apply a principle of equity and undertake to place the plaintiff as near as may be to his condition as it was before the tort? As far as the court could go to that end would be to allow him the cost of the hire of another animal until the crop was made, and then to pay him for the one he had lost. That, we think, should be the rule for damages in this case. Anything beyond this would be too remote and conjectural, and would lead the courts into a boundless field of investigation."

In *Luce v. Hoisington,* 56 Vt. 436, the court held that the allowance of damages for the loss or failure to raise a crop by reason of being deprived of the use of an ox in cultivating the land could not be sustained; that such

damages were not the natural and proximate result of the attachment of the ox. A failure to properly put in his crops and cultivate his lands was not the natural and proximate result of the attachment. It was the duty of the plaintiff to supply himself with the services of another team for carrying on his farming. And the court further said:

"The income from the lands depended much upon after-cultivation as well as upon seed, the season, the harvesting, and many contingencies, as well as the proper cultivation of the land in the spring. It furnished no just and exact measure of the loss occasioned by the attachment of the ox."

In this case the power necessary to plow appellant's land for seeding the crop could not be limited to the tractor purchased by him from the plow company. He had refused to strain his credit by procuring the discount of the notes and paying the cash to the plow company as it desired, and the plow company thereupon, wrongfully it is true, cancelled the contract and retook the tractor; but there were other tractors in Spokane— a large and populous commercial and industrial center—and if it was necessary to have a tractor immediately, appellant does not deny that he could have, as he says, strained his credit and bought what he needed, but he did not feel inclined to do so.

It will not do to adjudge that one can hold a particular person exclusively liable for all the results that may flow from a tort or breach of contract which were reasonably preventable; for, if such damages are allowed, which can be avoided or prevented, in whole or in part, by the exercise of ordinary diligence on the part of the injured party, the results to business will be disastrous. The enormous damages that might ensue from the breach of the smallest contract, or from the slightest tort, may be so augmented that no one would

be safe in doing any kind of business.   Upon this ground alone, in this particular case, without further considering any of the other important questions discussed by counsel, we are satisfied that appellant is not entitled to recover the damages claimed by him.

The judgment is affirmed.

PARKER, C. J., MACKINTOSH, BRIDGES, and FULLERTON, JJ., concur.